BAKER DRIVEAWAY COMPANY, INC., a Michigan Corporation; and William O. Bridge, an Individual, Plaintiffs,

v.

BANKHEAD ENTERPRISES, INC., a Georgia Corporation; and Leaseway Transportation Corp., a Delaware Corporation, Defendants.

Civ. A. No. 79–71457.

United States District Court, E. D. Michigan, S. D.

Nov. 2, 1979.

Lloyd M. Forster, Troy, Mich., for plaintiffs.

Robert A. Marsac, Dykhouse & Wise, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case involves a new development in the design of trailers used to transport new motor vehicles (automobiles, vans, and small trucks) from the assembly plants to the dealers throughout the country. Plaintiffs claim to have invented a new way of making such trailers more valuable by making it possible for the same trailer to carry ten cars on one trip and then, with only slight adjustments, carry five vans, seven pickup trucks, or some combination of vans, pickups and cars the next trip. Plaintiffs further claim that the defendants have improperly converted to their own use information that was not theirs to use and in so doing have copied and continue to copy the plaintiffs' designs.

Plaintiffs have filed an application for a patent for their design and that application is now pending with the Patent Office.

The case before the court is in two counts: count one charges the defendants with breaching a confidential relationship by misappropriating trade secrets while count two charges the defendants with "malicious interference with prospective advantageous commercial relationships." The defendants have moved this court to dismiss count two for failing to state a claim and for being premature considering the ongoing patent office proceedings.

While it may be that plaintiffs will have a cause of action in the future under the facts pled here, this court believes that any such action is premature and should be dismissed from this case.

The basis of plaintiffs' count two claim is that the defendants have taken certain actions in connection with the plaintiffs' pending patent application which have had the effect of delaying what plaintiffs assert is the inevitable issuance of the patent. In the words of the plaintiffs' complaint, the allegations are that:

37. Bankhead has resorted to a series of successive maneuvers in the Patent Office starting with the filing of a Protest alleging that Bankhead trailers were "on sale" more than one year before Bridge's filing date.

38. The trailers alleged to be "on sale" in Bankhead's Protest were the same H–1 and B–10 trailers that incorporated plaintiffs' trade secrets and were disclosed and offered for sale to Anchor by Bankhead in violation of Bankhead's confidential relationship with plaintiffs.

39. Bridge responded to such Protest in the Patent Office and on November 20, 1978 the Examiner entered an Office Action holding that Bankhead's protest did not present sufficient evidence to warrant a rejection.

40. Bankhead nevertheless persisted in interfering with and delaying the issuance of Bridge's patent by filing on December 28, 1978 additional allegations of prior public use and sale of other manufacturers' car haulers none of which, even if the allegations were true, anticipated any of Bridge's allowed claims.

41. Belatedly, on March 9, 1979 Bankhead resorted to further delaying tactics by filing a Petition for the Institution of Public Use Proceedings in the Patent Office thereby threatening to delay for years the final issuance of Bridge's patent.

Plaintiffs allege that defendants know that plaintiffs have a valid claim to a patent and that defendants have only taken the actions complained of in order to delay the issuance, and with it the effect, of the patent. According to plaintiffs, defendants will save a large amount of money that plaintiffs claim should be paid to plaintiffs as royalties for the use of plaintiffs' ideas since royalties cannot be owed for any time prior to the actual issuance of the patent.

■ At the outset, the court would like to emphasize the fact that the actions complained of in count two involve exclusively the efforts of the defendants to convince a governmental agency to exercise its power in certain ways. Our system of government places a high value on the freedom of the public to petition the government, and such activity will not be curtailed without some extraordinary showing of abuse. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Eastern Railroad Conference v. Noerr Motor Freight*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

■ In their motion to dismiss count two, the defendants have asserted that that count, despite the title given to it by plaintiffs, is really a thinly veiled claim of malicious prosecution. It is clear that one of the prerequisites to such an action is the termination of an earlier action in favor of the party that was then the defendant and is the plaintiff in the new action. Since the underlying "prosecution" in this case is the action taken in opposition to plaintiffs' patent application, the fact that that action is still pending would be fatal to plaintiffs' count two if defendants' characterization of that count is correct.

In opposition to this motion, plaintiffs claim that defendants, in considering count two to be a claim for malicious prosecution, have misconstrued the tenor of that count. It is the position of the plaintiffs that this count charges abuse of process and tortious interference with prospective contractual relationships. Since under neither of these causes of action is it necessary that the proceedings in the patent office be concluded, plaintiffs assert that the motion should be denied.

■ While it is not easy to fit count two into any theoretical cubbyhole, it is clear that plaintiffs' attempts to characterize it are incorrect. In an action for abuse of process, one must be challenging the way that some proceeding is handled rather than the motives for its institution. *Rowbotham v. D. A. I. I. E.*, 69 Mich.App. 142, 244 N.W.2d 389 (1976); *Spear v. Pendill*, 164 Mich. 620, 130 N.W. 343 (1911). In the case at bar, a reasonable reading of count two shows that the plaintiffs are challenging the defendants' substantive motives in taking the actions complained of in the patent office; nowhere are the procedures that have been utilized therein challenged.

■ In a claim of tortious interference with a prospective contractual relationship, the facts typically are that the defendant somehow induced a private third party not to enter into a contract with the plaintiff in some improper fashion. This is easily distinguished from the present case where the defendant, who admittedly is interfering, is doing so by petitioning the government. The principles of *California Transport, Pennington*, and *Noerr* prevent that from forming the basis for an action.

■ It is the belief of this court that a careful reading of count two indicates that it most resembles an action for malicious prosecution. The claim is that the defendants, knowing that their interference in the patent process was legally groundless, instituted them anyway with the intent to delay the issuance of the patent and avoid the payment of royalties for the period of the delay. At the heart of such a claim is the charge that the actions taken were groundless. The court that must make that determination will be aided by the eventual decision of the patent office in this case in the same way that a determination of a lack of probable cause is made easier by a prior dismissal in an ordinary malicious prosecution case.

■ This policy of letting the first tribunal that is called upon to consider an issue make its decision before any other tribunal (at least within the same jurisdiction) considers it is a good one and is especially useful when the first tribunal is one specialized in the area involved. The fact that one of the tribunals is an administrative agency rather than a court is of little consequence since Congress has the power to turn such disputes over to a forum of its choosing.

In this case, both the courts and the patent office can become involved, but since the patent office is specialized and since it was the first tribunal presented with the problems involved here, it should be permitted to decide them without interference from this court.

It appears to the court that the real reason for the existence of count two and the fight that plaintiffs have waged to keep it alive is that plaintiffs feel that the procedures set up by Congress and by the patent office are inefficient ways to deal with situations like the one at bar. Plaintiff is upset that defendants have the power to assert some things in the patent office and cause a delay in the issuance of the plaintiffs' patent and, consequently, in the plaintiffs' rights of exclusivity. While it may be that a better system could have been set up which would more efficiently deal with this or other situations, the fact is that the present system is a reasonable one, it was set up by the persons and agencies charged with setting it up, and it functions at least passably well. It is not for this court to interject its opinion of what might be the optimal system to employ.

For all of these reasons, count two is dismissed.

So ordered.