**ABBOTT LABORATORIES, Andrew J. Muetterties and Joseph N. Genese, Plaintiffs/Cross–Appellants,**

v.

**John F. BRENNAN, Defendant– Appellant.**

**Nos. 90–1268, 90–1424.**

United States Court of Appeals, Federal Circuit.

Dec. 27, 1991.

Suggestion for Rehearing In Banc Declined Feb. 7, 1992.

Michael Dockterman, of Wildman, Harrold, Allen & Dixon, Chicago, Ill., argued for plaintiffs/cross-appellants. With him on the brief was Joan M. Fencik.

Michelle A. Thomas, of Sullivan, Ward, Bone, Tyler, Fiott & Asher, Southfield, Mich., argued for defendant-appellant. With her on the brief was Ronald S. Lederman, of counsel.

Before NEWMAN, MAYER and LOURIE, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Appellant John F. Brennan, and cross-appellants Abbott Laboratories, Andrew J. Muetterties and Joseph N. Genese (collectively "Abbott"), ask our review of various aspects of the judgment of the United States District Court for the Eastern District of Michigan, including rulings on certain pre- and post-trial motions.[1]

*Background*

This case arose upon interference proceedings in the United States Patent and Trademark Office (the "PTO"), involving a patent application of which Mr. Brennan is the inventor, a patent owned by Abbott Laboratories of which Andrew J. Muetterties and Joseph N. Genese are joint inventors, and a reissue application owned by Abbott and naming only Muetterties as inventor. The invention of the counts of the interference is an intravenous delivery device for sequentially administering two medical liquids to a patient, each at a different flow rate.

The Board of Patent Appeals and Interferences awarded priority of invention to Brennan. The Board held that the Muetterties/Genese dates of conception and reduction to practice were prior to those of Brennan, but that because an attorney for Abbott had backdated a request for extension of time and falsely averred that the request had been timely made, this activity constituted inequitable conduct, with the result that Abbott was not awarded priority. *Brennan v. Muetterties*, 230 USPQ 145 (Bd.Pat.App. & Int.1986).

Abbott brought a civil action in the district court pursuant to 35 U.S.C. § 146,[2] seeking to set aside the award of priority to Brennan. Brennan counterclaimed for fraudulent misrepresentation, abuse of pro-

cess, tortious interference with economic relations, antitrust violations under the Sherman and Clayton Acts, violation of the Racketeer Influenced and Corrupt Organizations Act, and intentional infliction of emotional distress. The district court dismissed Brennan's claims for antitrust and RICO violations, intentional infliction of emotional distress, and fraudulent misrepresentation. The court declined to dismiss the claims for tortious interference and abuse of process.

Abbott then moved for summary judgment on the issue of priority of inventorship, arguing that the Board erred as a matter of law in awarding priority to Brennan based on Abbott's inequitable conduct. Abbott's position was that priority must be awarded to the first inventor, and that enforceability due to inequitable conduct is a separate issue, not determinative of priority. The district court granted summary judgment of priority of invention to Abbott, and remanded to the Board with instructions to refer the matter to the Commissioner of Patents and Trademarks "for the purpose of considering the allegations of inequitable conduct". On Brennan's motion the district court stayed trial of Brennan's remaining counterclaims pending the Commissioner's decision.

Upon remand the Board issued another decision awarding priority to Brennan due to Abbott's inequitable conduct, apparently ignoring the district court's contrary judgment. *Brennan v. Muetterties*, Interf. Nos. 100,817 and 101,078 (Bd.Pat.App. & Int. May 27, 1988). The Board explained that under "controlling law" the Board was "precluded from awarding priority against both parties." *Id.* at 4. The Board then referred the case to the Commissioner as the district court had ordered; the Commis-

1. *Abbott Laboratories v. Brennan*, No. 86–70935 (E.D.Mich. November 20, 1986) (Order); *Abbott Laboratories v. Brennan*, No. 86–70935 (E.D.Mich. November 20, 1989) (Order); *Abbott Laboratories v. Brennan*, No. 86–70935 (E.D.Mich. December 21, 1989) (Judgment); *Abbott Laboratories v. Brennan*, No. 86–70935 (E.D.Mich. February 22, 1990) (Order).

2. **35 U.S.C. § 146. Civil action in case of interference**

Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences, may have remedy by civil action.... In such suits the record in the Patent and Trademark Office shall be admitted on motion of either party ... without prejudice to the right of the parties to take further testimony....

sioner deferred review on his part until after judicial review of the Board's award of priority to Brennan. Upon return of the case to the district court, the parties filed cross motions for summary judgment on the issue of priority of invention. After a hearing, now before a different judge, the district court granted Brennan's motion and denied Abbott's; that is, the court awarded priority to Brennan because of Abbott's inequitable conduct. The prior judgment in favor of Abbott was vacated and judgment was entered in favor of Brennan. Abbott has not appealed this decision, and we do not consider its merits, or the correctness of the Board's view of the law.

Brennan then moved for sanctions against Abbott under Fed.R.Civ.P. 11, requesting award of costs and attorneys fees incurred in defending the 35 U.S.C. § 146 action in the district court. Abbott cross-moved for sanctions, stating that Brennan's counterclaims were not well-grounded in fact or law, and that Brennan's Rule 11 motion was frivolous. Both sides' motions were denied.

Trial was held to a jury on Brennan's counterclaims for tortious interference with economic relations and tortious abuse of process during the prosecution of the interference proceeding before the PTO. The jury returned a verdict in favor of Abbott on the tortious interference claim, and for Brennan on the abuse of process claim. The jury awarded Brennan damages of $1,350,000 for abuse of process, designated as $1,070,000 for emotional injuries, $250,000 for attorney fees, and $30,000 for out-of-pocket costs; all for the interference proceeding. The district court denied both sides' requests for judgment n.o.v. and a new trial, and denied renewed requests for Rule 11 sanctions. The court granted Abbott's motion to clarify the judgment, to the extent that prejudgment interest was disallowed for the period during which the 35 U.S.C. § 146 action was stayed because of the referral to the PTO, and for two shorter periods of stay. The court denied Abbott's motion for remittitur of the award of emotional damages, but remitted the award of attorney fees to $89,-439.75 and costs to $11,951.38, the actual sums incurred.

Brennan appeals the denial of his motions for sanctions under Rule 11 and for a new trial on his counterclaim of tortious interference with economic relations. Brennan also appeals the dismissal of his antitrust counterclaim and the grant of Abbott's motion that affected the amount of prejudgment interest. Abbott cross-appeals the denial of its motion for judgment n.o.v. or a new trial on the issue of abuse of process, and the partial denial of its alternative motion for remittitur.

### Jurisdiction

■ Upon Abbott's omission of appeal of the issue of priority of invention, the remaining issues are either matters of state law based on pendent jurisdiction, or issues of federal law that are not within the exclusive assignment of the Federal Circuit, but that were properly included at trial of the case. See Fed.R.Civ.P. 13(a); see generally 3 *Moore's Federal Practice,* ¶ 13.13 (2d ed. 1983). No issues arising under the patent law remain, and none is referred to in the notice of appeal. We thus have reviewed *sua sponte* our jurisdiction over this appeal.

Abbott's civil action was brought under 35 U.S.C. § 146. The district court's jurisdiction arose in part under Title 35, the codification of the patent law, and thus satisfies the requirement of:

**28 U.S.C. § 1338(a).** The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents....

All appeals in such circumstances are assigned exclusively to the Federal Circuit:

**28 U.S.C. § 1295(a)(1).** The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

(1) of an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title....

The path of appeal is determined by the basis of jurisdiction in the district court,

and is not controlled by the district court's decision or the substance of the issues that are appealed. The reasons are pragmatic: to avoid creating fresh opportunities for forum shopping; to avoid bifurcation of issues and cases at trial and on appeal; to remove uncertainty and the abuses of procedural maneuvering; and, ultimately, to facilitate resolution of disputes.

Thus, the direction of appeal to the Federal Circuit does not change during or after trial, even when the only issues remaining are not within our exclusive assignment. *See, e.g., Technicon Instruments Corp. v. Alpkem Corp.*, 866 F.2d 417, 419–20, 9 USPQ2d 1540, 1541–42 (Fed.Cir.1989) (antitrust counterclaim sole issue on appeal); *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1427, 223 USPQ 1074, 1077 (Fed.Cir.1984) (*en banc*) (copyright issue appealed separately). *See generally Aerojet–General Corp. v. Machine Tool Works, Oerlikon–Buehrle Ltd.*, 895 F.2d 736, 741–45, 13 USPQ2d 1670, 1675–77 (Fed.Cir.1990) (*en banc*) (discussing the well-pleaded complaint rule in the context of Federal Circuit jurisdiction). Appellate jurisdiction is not with the Federal Circuit when no well-pleaded claim arising under the patent law is stated in the pleadings before the district court, *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 807–10, 108 S.Ct. 2166, 2172–74, 100 L.Ed.2d 811, 7 USPQ2d 1109, 1113–14 (1988), or when the patent claim is merely "transient," *Schwarzkopf Development Corp. v. Ti–Coating, Inc.*, 800 F.2d 240, 245, 231 USPQ 47, 51 (Fed.Cir.1986) (patent counterclaim dismissed without opposition during pleading stage). *Accord, Unique Concepts, Inc. v. Manuel*, 930 F.2d 573, 575, 18 USPQ2d 1654, 1656 (7th Cir.1991) (jurisdiction of district court to enter judgment dismissing patent claim "came, in part, from (a well-pleaded complaint under) § 1338").

The path of this appeal was established with the filing of the civil action to obtain a patent in accordance with 35 U.S.C. § 146 and, although the § 146 issue was not appealed, this appeal of the other issues was correctly taken to the Federal Circuit.

## I

### BRENNAN'S APPEAL

#### A

*Rule 11 Sanctions*

■ Mr. Brennan argues that the district court erroneously denied his request for sanctions under Fed.R.Civ.P. 11 based on Abbott's filing of the civil action under 35 U.S.C. § 146, which Brennan states was for the purpose of harassment, to delay Brennan's receiving his patent after the award of priority by the PTO, and to increase his costs.

A district court's Rule 11 determination is reviewed on the standard of abuse of the trial court's discretionary authority. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990). In matters of sanctions particular deference is owed the trial court's discretion; for the trial judge has viewed the matter at first hand, has considered all the circumstances, and made assessments of credibility and other intangibles that escape the written record. *See id.*, 110 S.Ct. at 2460–61.

In this case the district court's denial of sanctions is well supported. The patent law authorizes any party to a patent interference to take civil action in the district court. 35 U.S.C. § 146. Such action is taken as of right. The vagaries of litigation inevitably delay final resolution of disputes. However, Congress has preserved this right of recourse to the courts from a decision of the PTO: a statutory right available at least since 1836. Act of July 4, 1836, § 16, 5 Stat. 117, 123–24. Absent improper purpose, a litigant's exercise of a statutory right of action can not be, of itself, a sanctionable offense. *See Cooter & Gell*, 110 S.Ct. at 2462 (discussing policy of not discouraging meritorious appeals).

Brennan argues that Abbott's position on the issue of priority under 35 U.S.C. § 146 was so obviously devoid of merit as to warrant sanctions. However, the district judge to whom the case was first assigned granted Abbott's motion for summary judgment based on Abbott's position that

inequitable conduct by counsel can not direct the decision of priority of invention. Although this question is not before us for review, this is not an area in which the law is so clear that Abbott's challenge in district court was "unreasonable under the circumstances." *Century Products, Inc. v. Sutter*, 837 F.2d 247, 253 (6th Cir.1988); *see also Davis v. Crush*, 862 F.2d 84, 88 (6th Cir.1988) (the challenged pleading must be tested as of the time the pleading was filed, not with "the wisdom of hindsight").[3]

The district court's denial of Brennan's request for Rule 11 sanctions is affirmed.

## B

### *Tortious Interference with Economic Relations*

The jury decided the issue of tortious interference with economic relations in favor of Abbott. Brennan argues that the district court abused its discretion in denying his motion for a new trial on this issue. Brennan states that the district court committed several errors at trial: in allowing Abbott to present the rebuttal testimony of three experts on medical devices, when Abbott did not disclose their identity until the day before trial; in precluding Brennan's expert, Dr. Coffey, from giving testimony on lost royalties; in excluding evidence of Abbott's marketing projections for its allegedly competing product; and in instructing the jury that it was required to determine whether "but for" Abbott's conduct Brennan would not have suffered harm, instead of instructing the jury that it need only determine whether Abbott's conduct was a "substantial factor" in causing harm to Brennan. We consider these issues *seriatim*.

### 1. The Rebuttal Witnesses

■ The Sixth Circuit practice is that "no error in the admission or exclusion of evidence is ground for reversal or granting a new trial unless refusal to take such

action appears to the court to be inconsistent with substantial justice." *TCP Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 549 (6th Cir.1981). The Federal Circuit has expressed a similar view. *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1066, 3 USPQ2d 1288, 1292 (Fed.Cir.1987) (a trial need be fair, but it need not be perfect). It is improper on appeal to disturb a district court's trial management, absent a clear abuse of judicial discretion. *Benedict v. United States*, 822 F.2d 1426, 1428 (6th Cir.1987).

■ The three medical witnesses, Melissa Kraus, Edward Hayman, and Larry Shoup, were called by Abbott in rebuttal to testimony by Brennan's witnesses Anna Dugan and Leon Pedell relating to the medical efficacy of the invention that was the subject of the patent interference. Abbott first revealed its intention to call these witnesses the day before trial. Brennan objected to the admission of their testimony, claiming unfair surprise. Abbott stated that the late identification of these witnesses was the result of its having been surprised to learn that Dugan and Pedell would testify on the issue of medical efficacy.

Brennan has not shown that he was prejudiced by the admission of this rebuttal testimony, or that there were unfair trial tactics or procedures, or that it was inappropriate in rebuttal. The trial court did not abuse its discretion in allowing the testimony of these witnesses under the circumstances that prevailed.

### 2. Expert Testimony on Royalties

■ Brennan's position was that he would have obtained a patent and earned royalties on the invention at issue, were it not for the delay caused by Abbott's maintenance of the interference proceeding. The district court ruled that Dr. Coffey could not testify as an expert on the issue of royalties. Dr. Coffey had stated that he was not an expert on patent royalties, and that he had no prior experience of analyz-

---

**3.** We apply Sixth Circuit law on review of the district court's rulings on Rule 11 and other matters not within the Federal Circuit's exclusive purview. *See Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d at 1438–40, 223 USPQ at 1086–87.

ing the market for a medical device, or any other product. The court could well have concluded that Dr. Coffey's testimony on this issue was not of expert dimension. *See Mannino v. International Manufacturing Co.*, 650 F.2d 846, 851 (6th Cir.1981) ("Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth.")

The trial judge has broad discretion in determining whether to admit expert testimony on any subject. Its ruling may not be disturbed absent clear error. *Lee Shops, Inc. v. Schatten–Cypress Co.*, 350 F.2d 12, 17 (6th Cir.1965), *cert. denied,* 382 U.S. 980, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966). We discern no abuse of discretion in this refusal to allow Dr. Coffey to testify as an expert on the royalties Brennan would have earned.

### 3. Abbott's Sales Projections

Brennan states that the district court erred in excluding evidence relating to Abbott's sales projections for an intravenous delivery device that Abbott was developing at the time of the patent interference. Brennan sought this evidence to establish Abbott's motive for tortiously interfering with Brennan's business expectations. Abbott argued that this device was one of several being considered by Abbott, and that the profit projections were not realized, and were speculative. The district court ruled that this evidence was not relevant because, *inter alia,* the documents did not show that the Abbott and Brennan proposed devices were similar. The court also expressed concern that allowing this evidence would create the risk of relitigating priority of invention, which issue had already been decided.

When balancing probative value against possible prejudice, the trial court has broad discretion. *See* Fed.R.Evid. 403; *Finch v. Monumental Life Ins. Co.*, 820 F.2d 1426, 1432 (6th Cir.1987). A trial court's admission or exclusion of evidence on grounds of relevance is reviewed for abuse of discretion. *Clarksville–Montgomery County School System v. United States Gypsum Co.*, 925 F.2d 993, 999 (6th Cir.1991). Excluded evidence is viewed in the light most favorable to its proponent, giving the "evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Laney v. Celotex Corp.*, 901 F.2d 1319, 1320 (6th Cir.1990) (quoting 1 J. Weinstein & M. Berger, *Weinstein's Evidence* § 403[03] (1982)). The reviewing court, in order to reverse such a decision made at trial, must be firmly convinced that a prejudicial mistake was made. *Schrand v. Federal Pacific Electric Co.*, 851 F.2d 152, 157 (6th Cir.1988). We do not have that conviction. The trial court's ruling will not be disturbed.

### 4. Jury Instructions on Tortious Interference

Brennan asserts that the district court erroneously and inconsistently instructed the jury as to the proper standard of causation of damages from the tort of interference with economic relations. The court told the jury:

Before Mr. Brennan can prevail on either claim, he must prove by a preponderance of the evidence any damages sustained were proximately caused by the Defendants' actions.

Proximate cause is an act which, in the natural and continuous sequence, directly produces the harm without which the harm would not have occurred.

\*     \*     \*     \*     \*     \*

When more than one act or factor may be the cause of the harm, it is necessary to determine whether, but for the Defendants' acts, Plaintiff would not have suffered any harm.

\*     \*     \*     \*     \*     \*

If the Defendants' conduct was not a substantial factor in causing a third party not to enter into a relationship or continue a relationship with Mr. Brennan, the Defendants cannot be found responsible for Mr. Brennan's failure to enter into a relationship or continue a relationship.

The conduct of the Defendants was not a substantial factor in causing the Plaintiff's loss if reasonable men and women would not regard it as a cause of loss.

Mr. Brennan argues that the "but for" instruction (in the third quoted paragraph) is inconsistent with the "substantial factor" instruction (in the fifth paragraph), which Brennan asserts is the correct standard. This inconsistency, Brennan states, is reversible error requiring a new trial. Brennan had raised this objection to the district court, and thus the issue is properly before us. Fed.R.Civ.P. 51.

■ In reviewing the jury charge for correctness and adequacy, the jury instructions are viewed as a whole. *Howard v. Chesapeake and Ohio Ry. Co.*, 812 F.2d 282, 287 (6th Cir.), *cert. denied*, 484 U.S. 820, 108 S.Ct. 78, 98 L.Ed.2d 40 (1987). "Each instruction must be considered in connection with others of the series referring to the same subject." *Clarksville–Montgomery County School System*, 925 F.2d at 1003.

> Generally, a charge that contains an inaccurate or ambiguous statement does not constitute reversible error if the inaccuracy or ambiguity is unlikely to mislead the jury. In considering whether an isolated clause in the jury instructions is likely to have misled the jury, a reviewing court must consider the entire charge. Thus, the critical inquiry is whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried.

*Teal v. E.I. DuPont deNemours & Co.*, 728 F.2d 799, 802 (6th Cir.1984) (citations omitted).

■ Commentators have explained that the "but for" and "substantial factor" standards of causation generally yield identical results:

> Except in the classes of cases indicated [not here relevant], no case has been found where the defendant's act could be

called a substantial factor when the event would have occurred without it; nor will cases very often arise where it would not be such a factor when it was so indispensable a cause that without it the result would not have followed.

Prosser & Keeton, *Torts*, at p. 268 (5th ed. 1984) (footnotes omitted); *see generally Restatement (2d) of Torts*, § 431, comment a (1965) (explaining the distinction between substantial cause in the legal sense and cause in the "philosophic" sense). Michigan courts have treated the substantial factor test as the more rigorous:

> Causation in fact includes *more* than a simple "but for" relationship between the negligent act and the damage. The negligence must also be a "substantial factor" in producing the injury.

*Derbeck v. Ward*, 178 Mich.App. 38, 443 N.W.2d 812, 814 (1989) (discussing causation in fact as an element of proximate cause).

Applying this guidance, and viewing the instructions in context and in their entirety, *Clarksville–Montgomery, supra*, we conclude that the trial court did not mislead the jury on the factors to be considered and the law to be applied, and that Mr. Brennan was not prejudiced by the jury instructions. The court did not abuse its discretion in denying Brennan's motion for a new trial on this ground.

## C

### *The Antitrust Counterclaim*

Mr. Brennan argues that the district court erred in dismissing his counterclaim for violation of the Clayton and Sherman Acts. *Inter alia*, Brennan had alleged that Abbott, by continuing to prosecute the interference and by filing the 35 U.S.C. § 146 action after having engaged in inequitable conduct, was attempting to monopolize commerce in the subject matter of the contested invention.[4]

---

**4.** Section 2 of the Sherman Act, 15 U.S.C. § 2, prohibits monopolization or attempts to monopolize:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire

with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony....

In determining whether to dismiss a claim pursuant to Fed.R.Civ.P. 12(b)(6), the district court accepts as true all of the factual allegations of the complaint. Appellate review is on the same basis. *Kerasotes Michigan Theatres, Inc. v. National Amusements, Inc.*, 854 F.2d 135, 136 (6th Cir.1988), *cert. dismissed*, 490 U.S. 1087, 109 S.Ct. 2461, 104 L.Ed.2d 982 (1989). Dismissal under Rule 12(b)(6) is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Lamb v. Phillip Morris, Inc.*, 915 F.2d 1024, 1025 (6th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 961, 112 L.Ed.2d 1048 (1991) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

◼ In an antitrust action "the complaint need only allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws." *Kerasotes Michigan Theatres*, 854 F.2d at 136 (quoting *Newman v. Universal Pictures*, 813 F.2d 1519, 1522 (9th Cir.1987), *cert. denied*, 486 U.S. 1059, 108 S.Ct. 2831, 100 L.Ed.2d 931 (1988)). The elements of a claim for attempted monopolization, as elaborated by the Sixth Circuit, are: (1) a specific intent to monopolize; (2) anti-competitive conduct; and (3) a dangerous probability of success. *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413, 1431 (6th Cir.1990), *cert. denied*, — U.S. —, 112 S.Ct. 51, 116 L.Ed.2d 29, — U.S. —, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991); *White & White, Inc. v. American Hosp. Supply Corp.*, 723 F.2d 495, 506–07 (6th Cir.1983) (citing *Lorain Journal Co. v. United States*, 342 U.S. 143, 153, 72 S.Ct. 181, 186, 96 L.Ed. 162 (1951)).

Brennan asserts that the allegations of his antitrust claim state a cause of action in accordance with *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247, 147 USPQ 404 (1965). In *Walker Process* the Court held that maintenance and enforcement of a patent procured by knowing and willful fraud may meet the intent and conduct elements of violation of the Sherman Act, provided that the ability to lessen or destroy competition, including market power in the relevant market, can also be shown. 382 U.S. at 173, 177–78, 86 S.Ct. at 348, 350–51, 15 L.Ed.2d 247, 147 USPQ at 405, 407. Brennan asserts that market power is presumed from the presence of a patent.

◼ A patent does not of itself establish a presumption of market power in the antitrust sense. *Walker Process*, 382 U.S. at 178, 86 S.Ct. at 350, 147 USPQ at 407 (considering, inter alia, whether there are non-infringing substitutes for the patented device); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1367, 220 USPQ 763, 776 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984) ("patent rights are not legal monopolies in the antitrust sense of that word"). The commercial advantage gained by new technology and its statutory protection by patent do not convert the possessor thereof into a prohibited monopolist. *See generally United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966) (distinguishing the willful acquisition or maintenance of monopoly power from "growth or development as a consequence of a superior product, business acumen, or historic accident.") The patent right must be "coupled with violations of § 2", and the elements of violation of 15 U.S.C. § 2 must be met. *Walker Process*, 382 U.S. at 177–78, 86 S.Ct. at 350, 147 USPQ at 407; *see Hartford–Empire Co. v. United States*, 323 U.S. 386, 406, 65 S.Ct. 373, 384, 89 L.Ed. 322, 64 USPQ 18, 28 (1945) (discussing differences between "legitimate use and prohibited abuse" of patent rights).

◼ Determination of whether the patentee meets the Sherman Act elements of monopolization or attempt to monopolize is governed by the rules of application of the

Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), provides for civil action for treble damages for violation of the antitrust laws.

antitrust laws to market participants, with due consideration to the exclusivity that inheres in the patent grant. *See Loctite Corp. v. Ultraseal, Ltd.*, 781 F.2d 861, 876–77, 228 USPQ 90, 100–01 (Fed.Cir.1985) (discussing relationship between the patent and the antitrust laws). In *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 37 n. 7, 104 S.Ct. 1551, 1571 n. 7, 80 L.Ed.2d 2 (1984), Justice O'Connor wrote in concurrence:

> A common misconception has been that a patent or copyright, a high market share, or a unique product that competitors are not able to offer suffices to demonstrate market power. While each of these three factors might help to give market power to a seller, it is also possible that a seller in those situations will have no market power: for example, a patent holder has no market power in any relevant sense if there are close substitutes for the patented product.

*See generally* W. Montgomery, *The Presumption of Economic Power for Patented and Copyrighted Products in Tying Arrangements*, 85 Colum.L.Rev. 1140, 1150–51 (1985) ("the existence of a patent or a copyright provides little, if any, evidence of supernormal profits, barriers to entry, consumer preferences, or absence of adequate substitutes. It thus does not dispose of the question whether a product has market power"). Analysis under the rule of reason takes into consideration the policy underlying the patent grant and the national interest served; for the public purpose of the patent grant as an incentive to invention, investment, and disclosure, is achieved solely by the statutory right to exclude. *See generally* W. Bowman, *Patent and Antitrust Law* 1–14 (1973).

■ The Sixth Circuit has rejected "any absolute presumption of market power for copyright or patented product". *A.I. Root Co. v. Computer/Dynamics, Inc.*, 806 F.2d 673, 676 (6th Cir.1986) (discussing precedent in light of policy, economics, and the realities of the marketplace). Absent a presumption of market power, Brennan alleged insufficient facts to satisfy the elements of an antitrust violation. *Lamb*, 915 F.2d at 1025 (requiring allegations of facts). Allegations of legal conclusions are insufficient to withstand a motion to dismiss. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986).

The district court correctly held that Brennan failed to state a cause of action under the Sherman Act. The dismissal of Brennan's antitrust counterclaims is affirmed.

## II

### ABBOTT'S CROSS–APPEAL

Abbott appeals the judgment entered upon the jury finding of abuse of process, including the damages awarded for emotional distress.

■ Abbott argues that Brennan's counterclaim for abuse of process should have been dismissed as a matter of law, because no judicial process was involved in the interference proceedings before the United States Patent and Trademark Office, and because PTO proceedings are not subject to collateral attack under state law. The district court had denied Abbott's motion for dismissal, ruling that the premises of the tort of abuse of process under Michigan law had been met. We review *de novo* the correctness of the district court's determination of state law. *Salve Regina College v. Russell*, —— U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

■ We need not decide the broad question of whether actions in connection with federal administrative proceedings can ever provide the "process" for a common law claim of abuse of process. Before us is the narrow question of whether the state tort action for abuse of process can be invoked as a remedy for inequitable or other unsavory conduct of parties to proceedings in the Patent and Trademark Office. We conclude that it can not.

The patent grant is within the exclusive purview of federal law. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 n. 7, 84 S.Ct. 784, 788 n. 7, 11 L.Ed.2d 661, 140 USPQ 524, 527 n. 7 (1964). Although certain traditional state law concerns may properly be raised when patent rights are

litigated, *see Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 154–56, 109 S.Ct. 971, 979–80, 103 L.Ed.2d 118, 9 USPQ2d 1847, 1853–54 (1989) (such concerns including, *inter alia*, deceptive simulation of trade dress, trade secret protection, and misappropriation of proprietary information), the issue at bar relates directly to administrative proceedings before the PTO Board of Patent Appeals and Interferences.

Prior judicial consideration of this question is sparse. In *Baker Driveaway Co., Inc. v. Bankhead Enterprises, Inc.*, 478 F.Supp. 857, 207 USPQ 365 (E.D.Mich. 1979), the district court held that the filing of a protest against a patent application in the PTO did not support a state action for abuse of process. The court observed that the actions complained of occurred before a federal agency, and remarked that "the freedom of the public to petition the government ... will not be curtailed without some extraordinary showing of abuse", *id.* at 859, 207 USPQ at 367, citing *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). This reasoning supports the conclusion that an asserted abuse of process before the Patent and Trademark Office is not remediable by state action in tort, at least unless it is shown that the entire federal agency action was a "sham", the word of *Noerr*, 365 U.S. at 144, 81 S.Ct. at 533. Such a showing, or assertion, was not here made. Although Brennan complains of the delay he experienced in receiving a patent after Abbott's false affidavit of mailing, we take notice that delay is ubiquitous in PTO proceedings, and does not of itself support an action for abuse of process.

The court in *Baker Driveaway* observed that the plaintiffs were not challenging the way the proceeding before the PTO was handled, but instead were challenging the motives for its institution. This observation provided another reason for the court's

dismissal of the count, for under Michigan law the tort of abuse of process requires that "one must be challenging the way that some proceeding is handled rather than the motives for its institution." *Id.*, 478 F.Supp. at 860, 207 USPQ at 367, citing *Rowbotham v. D.A.I.I.E.*, 69 Mich.App. 142, 244 N.W.2d 389 (1976). While Brennan states that his challenge is indeed to the way Abbott handled the interference proceeding before the PTO, and not to Abbott's motives, that is contrary to his presentation.

The *Baker Driveaway* court also discussed the policy of allowing the administrative agency to decide matters properly before it, and declined to create a new system of judicial overview of actions before the PTO. This reasoning accords with that expressed in *Gilbert v. Ben–Asher*, 900 F.2d 1407 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990), wherein the Ninth Circuit affirmed the dismissal of an abuse of process claim in which the plaintiff challenged a ruling of the state Board of Medical Examiners revoking his medical license. The court in *Gilbert* observed that the administrative ruling was subject to judicial review, that no such appeal had been taken, and thus that the issue on which the abuse of process claim was grounded had "already been litigated and decided". *Id.* at 1411. Although Brennan's claim before the administrative agency had been decided in his favor, and thus was not appealable by him, that is not grounds for providing another forum for litigating issues arising from the administrative process.

The only authorities cited by Brennan in support of this action do not relate to analogous administrative proceedings. E.g., *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585 (1981); *Meehan v. Michigan Bell Telephone Co.*, 174 Mich.App. 538, 436 N.W.2d 711, 726 (1989); *Vallance v. Brewbaker*, 161 Mich.App. 642, 411 N.W.2d 808, 810 (1987). We note, however, the holding in *Neumann v. Vidal*, 710 F.2d 856 (D.C.Cir.1983), wherein the court refused to dismiss a claim for abuse of process in the PTO when the basis was an anticompetitive

motive. We believe that the better general rule is that based on judicial disfavor of collateral attack, under the common law, on proceedings before the PTO.

We conclude that the federal administrative process of examining and issuing patents, including proceedings before the PTO's boards, is not subject to collateral review in terms of the common law tort of abuse of process. The PTO procedures themselves provided a remedy for Abbott's malfeasance.[5] An additional state action would be an inappropriate collateral intrusion on the regulatory procedures of the PTO, "under the guise of a complaint sounding in tort", in the words of *Gilbert v. Ben–Asher*, 900 F.2d at 1411, and is contrary to Congress' preemptive regulation in the area of patent law. *Bonito Boats, supra.*

The judgment of abuse of process is reversed, as is the award of damages therefor.

### *Summary*

On Mr. Brennan's appeal, the denial of sanctions under Rule 11, the dismissal of the antitrust counterclaims, and the denial of a new trial on the tortious interference counterclaim, are affirmed. On Abbott's cross-appeal, the judgment of abuse of process, and the award of damages therefore, is reversed. Other issues raised on this appeal, such as prejudgment interest, are mooted.

No costs.

AFFIRMED IN PART, REVERSED IN PART.

---

**5.** Brennan was awarded a patent although the PTO found that Brennan was not the first inven-

tor of the subject matter.