**FULL DRAW PRODUCTIONS,
a Colorado corporation,
Plaintiff,**

v.

**EASTON SPORTS, INC.,
et al., Defendants.**

**Civil Action No. 97–WY–1121–B.**

United States District Court,
D. Colorado.

Dec. 23, 1997.

James A. Jablonski, Gorsuch Kirgis L.L.C., Denver, CO, for Plaintiff.

John M. Peterson, Howe & Hutton, Ltd., Chicago, IL, Thomas D. Ready, Ready, Sullivan and Ready, Monroe, MI, John Ashton, Robert Wing, Prince, Yeates & Geldzahler, Salt Lake City, UT, Jon F. Sands, Bostrom & Sands P.C., Denver, CO, Timothy C. Houpt, Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, Milton Wolson, Malina & Wolson, New York City, Charles Scott Crabtree, Alexander & Crabtree, P.C., Denver, CO, Todd L. Vriesman, Petrie, Bauer & Vriesman L.L.P., Denver, CO, Paul C. Daw, Matthew Feigenbaum, Sherman and Howard, Denver, CO, John P. Mitzner, Hall & Evans L.L.C., Denver, CO, Gerald Maltz, Miller, Pitt & McAnally, P.C., Tucson, AZ, William H. Stein, Brecksville, Ohio, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

BRIMMER, District Judge.

This matter having come before the Court upon Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and the Court, having reviewed the materials on file, having heard oral argument, and being fully advised in the premises herein, hereby FINDS and ORDERS as follows:

### *Background*

Plaintiff Full Draw was the organizer and promoter of a Bowhunting Trade Show from

1990 to 1997. Defendant Archery Manufacturing & Merchants Organization ("AMMO") is a trade organization of entities engaged in the archery business. Defendants Easton, Browning, Precision Shooting, Hoyt, and Bear Archery are AMMO members and manufacturers of archery products. Defendant Outtech is a manufacturer's representative. Defendant Ehlert Publishing publishes an archery trade publication.

Plaintiff organized the Bowhunting Trade Show to promote merchandise to dealers. Plaintiff solicited trade show participants, sold space to manufacturers, and charged admission to dealers. Plaintiff and AMMO entered into an agreement in 1990 whereby Plaintiff paid AMMO ten percent (10%) of the show's revenue in exchange for AMMO's endorsement. In 1994, AMMO sought to increase its share of the show's revenue to thirty percent (30%). Discussion ensued between Plaintiff and AMMO concerning the sale of the show to AMMO, and during that time various Defendants threatened to boycott the show unless Plaintiff sold its interest to AMMO. Plaintiff decided against the sale, and the threatened boycott subsequently drove Plaintiff out of business as Defendants and dealers defected en masse to AMMO's competing bowhunting trade show.

Plaintiff brought suit alleging violations of federal and state antitrust laws and seeking recovery of lost revenues and profits resulting from the boycott of Plaintiff's show by Defendants. Plaintiff also brought a state law claim for tortious interference with prospective business advantage. Defendants seek dismissal of the claims.

### Standard of Review

Dismissal pursuant to Rule 12(b)(6) for failure to state a claim is warranted only where a plaintiff can prove no set of facts that would entitle him to relief. *Jojola v. Chavez,* 55 F.3d 488, 490 (10th Cir.1995). For purposes of deciding a motion to dismiss, the Court must accept all of the complaint's well-pleaded allegations as true and construe them in the light most favorable to the plaintiff. *Id.* Nevertheless, the plaintiff must allege sufficient facts on which a recognized legal claim may be based. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). Fur-

ther, conclusory allegations without supporting factual averments are insufficient to state a claim. *Id.*

### Discussion

#### I. Plaintiff's federal antitrust claims

■ In order to supplement enforcement of the antitrust laws, Congress created private causes of action allowing the recovery of treble damages and the obtainment of equitable relief. *See* 15 U.S.C. §§ 15, 26. "This additional avenue of enforcement, however, is not open to all who might be interested in punishing the wrongdoer or who might have suffered some peripheral loss." *Alberta Gas Chemicals v. E.I. Du Pont De Nemours,* 826 F.2d 1235, 1239 (3d Cir.1987). Instead, the remedies provided by Section 4 of the Clayton Act are limited to those who can "prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (emphasis in original). An injury that is merely causally linked in some way to an alleged antitrust violation is insufficient. *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.,* 899 F.2d 951, 961 (10th Cir.1990). As one court has described it, the Supreme Court's antitrust injury doctrine "requires every plaintiff to show that its loss comes from acts that reduce output or raise prices to consumers." *Chicago Professional Sports Ltd. Partnership v. NBA,* 961 F.2d 667, 670 (7th Cir.1992). This requirement applies regardless of the type of antitrust violation alleged, *see Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 341–45, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990), and regardless of whether the alleged antitrust violation in fact occurred, *see Indiana Grocery, Inc. v. Super Valu Stores, Inc.,* 864 F.2d 1409, 1419 (7th Cir.1989) ("the mere presence of a substantive Sherman Act section 1 violation—again, per se or not—does not by itself bestow on any plaintiff a private right of action for damages").

■ The Court further notes that as a competitor, rather than a consumer, Plaintiff's theories of injury under section 4 de-

serve particularly intense scrutiny. *See id.* This is so because, as courts have often noted, "[t]he antitrust laws were enacted for 'the protection of *competition*, not *competitors*.'" *Atlantic*, 495 U.S. at 328 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962) (emphasis in original)). As one court put it, "[w]hen the plaintiff is a poor champion of consumers, a court must be especially careful not to grant relief that may undercut the proper functions of antitrust." *Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins., Inc.*, 784 F.2d 1325, 1334 (7th Cir.1986).

 This admonition is particularly relevant in the instant case because Defendants are consumers who were dissatisfied with Plaintiff's product and decided to provide for themselves instead, becoming Plaintiff's competitors. Plaintiff's complaint is replete with the sometimes obscure terminology of antitrust law, but Plaintiff has failed to make any specific allegations that its loss came from Defendants' acts that reduced output or raised prices for consumers.[1] While Plaintiff makes some conclusory allegations that "[t]he actions of Defendants unduly restrain[ed], hinder[ed], and suppress[ed] competition," (Compl. at ¶ 110), Plaintiff's complaint contains no specific factual allegations about how Defendants' acts did so. Instead, Plaintiff focuses on the decline in its own sales. A producer's loss, however, is no concern of the antitrust laws—the antitrust laws serve to protect consumers from suppliers, rather than suppliers from one another. *See Stamatakis Industries, Inc. v. King*, 965 F.2d 469, 471 (7th Cir.1992); *Oahu Gas Service, Inc. v. Pacific Resources, Inc.*, 838 F.2d 360, 370 (9th Cir.1988) (stating that the antitrust laws do not proscribe unfair business practices that injure a competitor, even if specifically intended to eliminate the compet-

itor, so long as the practices do not injure consumers).

Simply put, Plaintiff has alleged that Defendants' competitive acts drove it out of business, but has not alleged that those same acts caused harm to consumers or competition—and this is unsurprising where Defendants are many of the relevant consumers and their acts increased, albeit temporarily, competition. By definition, it would seem that where a majority of consumers believe that a monopoly producer is not performing adequately and decide to provide an alternative for themselves and other consumers, there can be no antitrust injury, particularly where, as here, there have been no allegations that harm was caused to any other consumers (e.g., the other exhibitors or the attendees of the shows) by reduced output or increased prices. Had Defendants used their newly acquired monopoly position to decrease the availability of or raise the price of exhibition space, Plaintiff might have suffered antitrust injury, but the only harm alleged by Plaintiff is harm to itself. Thus Plaintiff's federal antitrust claims must be dismissed for failure to plead the requisite antitrust injury for recovery by a private party under § 4 of the Clayton Act, and because the Court finds that even if given leave to amend Plaintiff would be unable to allege facts demonstrating antitrust injury, the claims will be dismissed with prejudice.

 The Court further notes that Plaintiff has failed to make specific factual allegations defining the relevant product and geographical market, the number of market participants and their relative shares, or Defendants' market power. Thus Plaintiff's federal antitrust claims should also be dismissed for failure to plead the requisite elements of Sherman Act Section 1 and Section 2 claims. *See Ultradent Products, Inc. v.*

---

1. Plaintiff concedes that consumers were not harmed by increased prices, but attempts to argue that Defendants' acts reduced output. Plaintiff's own allegations, however, demonstrate that output was not reduced in any way that caused an antitrust injury to consumers or competition. Plaintiff was initially the sole supplier of exhibition space at archery shows; Defendants' entry as competitors increased the exhibition space and options at archery shows. While it is true that following Plaintiff's withdrawal from the field the exhibition space at archery shows was reduced to its previous level, it is also clear that consumers were no worse off than they were before Defendants entered the archery show market, and were likely better off because of the competition, however short lived, created by Defendants. Plaintiff essentially complains that one monopolist was replaced by another, without alleging any harm to consumers or competition through reduced output or increased prices.

*Life–Like Cosmetics,* 924 F.Supp. 1101, 1115 (D.Utah 1996) (finding bald allegation of market share insufficient to support claim without additional factual allegations of relevant factors such as the strength of the competition, barriers to entry into the market, and elasticity of demand); *AT & T v. IMR Capital Corp.,* 888 F.Supp. 221, 253 (D.Mass.1995) (dismissing claim that made broad allegations of market power but failed to make specific allegations concerning market power and its use); *see also Abbott Laboratories v. Brennan,* 952 F.2d 1346, 1355 (Fed.Cir.1991) (finding allegations of legal conclusions insufficient to withstand motion to dismiss where plaintiff failed to allege sufficient facts to satisfy elements of antitrust violation).

### II. Plaintiff's state antitrust claims

Neither party independently analyzed or argued Plaintiff's state antitrust claims, instead assuming that their disposition would be governed by the Court's disposition of the federal antitrust claims. The relevant case law and legislative history support the parties' assumption, indicating that the federal and Colorado antitrust statutes should be construed together. *See, e.g., Smalley & Co. v. Emerson & Cuming, Inc.,* 808 F.Supp. 1503, 1516 (D.Colo.1992) (applying analysis of federal antitrust claims to Colorado antitrust claims in granting motion for summary judgment where parties did not separately address state antitrust claims); Colo.Rev.Stat. § 6–4–119 (providing that in construing the Colorado Antitrust Act, "the courts shall use as a guide interpretations given by the federal courts to comparable federal antitrust laws"). Thus the Court applies its analysis of the federal antitrust claims to Plaintiff's Colorado antitrust claims and dismisses them accordingly.

### III. Plaintiff's remaining state law claim

Pursuant to 28 U.S.C. § 1367(c)(3), the Court has discretion to decline to exercise supplemental jurisdiction over state law claims once it has dismissed the claims over which it had original jurisdiction. *See Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486,

1492 (10th Cir.1995). Thus the Court will dismiss Plaintiff's remaining state law claim.

Therefore, it is ORDERED that Defendants' Motion to Dismiss is hereby GRANTED.