**C.B.C. ENTERPRISES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 650–89C.**

United States Claims Court.

Aug. 5, 1991.

Reissued Sept. 13, 1991 *.

Gary G. Stevens, Washington, D.C., for plaintiff. Kevin R. Garden, of counsel.

Brad Fagg, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, and Jeanne E. Davidson, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

Pending are defendant's motion to dismiss Count XII of plaintiff's amended complaint for lack of subject matter jurisdiction and defendant's motion to quash subpoenas. In its motion to dismiss, defendant asserts that Count XII sounds in tort, rather than in contract, and thus Count XII is not within the jurisdiction of the court. See 28 U.S.C. § 1491(a)(1) (1988). Further, defendant argues that dismissal of Count XII is warranted because the damages sought under that Count include attorney's fees and other consequential damages that cannot be awarded in this case. The Government has moved to quash trial subpoenas for Joseph R. Loschi and Sharon Conklin, attorneys on the staff of the Norfolk District of the U.S. Army Corps of Engineers, on the grounds that their testimony is relevant to Count XII and that requiring their testimony would violate the

---

* This opinion was originally issued without publication. Defendant moved for reissuance as a published opinion. Plaintiff did not oppose the motion and for good cause shown, the motion is granted.

Government's attorney-client privilege and disrupt defendant's trial preparation.

For the reasons expressed below, the court concludes that the matters alleged in Count XII are tortious in nature and thus beyond the court's jurisdiction. Moreover, the court finds that Count XII alleges damages which are not recoverable as a matter of law in this action. Therefore, the defendant's motion to dismiss is granted. On the understanding that Loschi and Conklin were subpoenaed solely in connection with Count XII, the motion to quash is also granted.

### FACTS

Plaintiff, C.B.C. Enterprises ("CBC"), entered into contract no. DACA65–88–C–0014 with the Corps of Engineers, for modifications to two government buildings, which included demolition, miscellaneous site-work, concrete, masonry, carpentry, plastering, painting, mechanical, electrical, and other associated work. Although performance of the contract was completed, plaintiff filed a complaint alleging that the Government caused delay in performance, requested additional work, interfered with performance, and withheld information. After the complaint was filed, CBC submitted a request for a Contracting Officer's ("CO's") decision on further claims for active interference, failure to evaluate equitable adjustment claim fairly, failure to administer contract with due care, and failure to act in good faith and deal fairly. When no final decision was issued, plaintiff amended its complaint to assert these claims in a new Count XII. Solely for the purposes of its motion to dismiss the Government accepts as true the following allegations contained in Count XII.

On or about March 29, 1988, CBC submitted Transmittal No. 71 requesting approval of a deviation from the specification for the installation of a plastic wireway and the Government approved the request on the same date. At some time subsequent to March 29, 1988 and prior to the Government's production of documents in this action the Government's Quality Assurance Reports of March 29, 1988 and the sur-

rounding dates and the Government's copies of CBC's reports for those same days were destroyed or lost. Moreover, at a point in time prior to the Government's document production, the Government's copy of the contract submittal register was lost or destroyed.

Subsequent to the filing of this action Captain Phillip Galing, formerly the CO's representative, and Roy Little, the Project Manager under the contract, informed representatives of the Army's Criminal Investigation Command ("CID") that they could not authenticate Galing's signature on Transmittal No. 71 dated March 29, 1988 and that Transmittal No. 71 had not been approved. As a result of their statements, CID initiated a criminal investigation of CBC and its representatives on the charge that CBC's representatives had forged Galing's signature on Transmittal No. 71 and were attempting to defraud the government. CBC became aware of the investigation and submitted affidavits and correspondence in an effort to assert its position that Transmittal No. 71 was in fact approved by Galing.

At the time of the CID investigation, the CO knew or had reason to know that the contract's plastic wireway specifications were defective and that a deviation from the specifications would have had to be approved regardless of the approval or disapproval of Transmittal No. 71 in order for the wireway to be installed by CBC. Although CBC's claim for an equitable adjustment with respect to the metal/plastic wireway was submitted by letter dated March 9, 1988, the CO had not issued a final decision at the time CBC filed its claim here on November 29, 1989. Moreover, the CO had not issued a final decision on several other equitable adjustment claims submitted by CBC.

During the work under the contract in the fall of 1988, Little conducted an on-site labor survey of CBC's sheet metal contractor, E.B. Rudiger & Sons ("Rudiger"). According to plaintiff, Little inquired as to why some of the sheet metal laborers were assisting a mechanic. Subsequently, CBC was informed that the laborers in question

should be paid at a higher wage rate because of the type of work they were performing. Although CBC and Rudiger disagreed with the Government, Rudiger stated that it would make restitution and henceforth pay the laborers under a split wage approach consistent with past Corps of Engineers' practice in the area.

CBC was reassured that this wage rate matter would be resolved upon review of the evidence of any local practice. CBC requested the CO's final decision on the matter but none was ever issued. Finally, CBC was informed that the matter was being forwarded for a formal ruling by the Department of Labor Employment Standards Administration.

CBC asserts in its brief that the CO, in conjunction with Loschi of the Norfolk District Legal office, secretly recommended debarment of Rudiger for a three-year period, and, by necessary implication, a similar debarment of CBC, when they referred this matter to other offices of the Department of the Army for eventual referral to the Department of Labor. After learning of the recommendations of debarment, CBC prepared a point-by-point rebuttal and supplied copies of this rebuttal to the CO, the Department of Labor and to other pertinent officials within the Department of the Army.

On or about February 22, 1990, Donald Dow, the CO's Representative who replaced Galing, executed a Performance Evaluation which stated that CBC's compliance with Labor standards under the contract was unsatisfactory. This evaluation further stated that CBC's sheet metal subcontractor field supervisors had provided "fraudulent depositions" in response to the alleged labor violation and that "CBC's Executive Officer has filed a claim for harassment against the District's Labor Specialist for pursing this case." At the time Dow

prepared this evaluation he had no factual knowledge which would support these allegations. Dow was instructed to insert these false statements in CBC's evaluation by individuals within the Corps' Norfolk District legal office. When the performance evaluation was disclosed to CBC during discovery, CBC brought to the attention of the CO the allegedly unfounded charges and a new evaluation was demanded by CBC.

In Count XII of its amended complaint, plaintiff alleges that the Government, through each of the acts and omissions described above, has violated several implied contractual obligations, namely, its duty to act in good faith and deal fairly,[1] to cooperate and not to hinder,[2] to evaluate claims for equitable adjustment fairly, to administer the contract with due care,[3] and to not actively interfere.[4] First, plaintiff alleges that the acts and omissions of the CO and his representatives resulting in the instigation of the CID investigation were "malicious and unwarranted actions" which constituted intentional wrongful conduct or at the least gross negligence in the administration of the contract. Second plaintiff, alleges that the insertion of false allegations in the performance evaluation constitutes further evidence that the Government interfered and failed to act in good faith or to deal fairly. Third, plaintiff alleges that the recommendation to debar CBC and its subcontractor was based upon erroneous and unfounded allegations and constituted further evidence of the Government's failure to deal fairly. Fourth, plaintiff alleges that the CO's failure to issue equitable adjustments in response to various claims constitutes unfair dealing and failure to evaluate the claims fairly.

Based on these allegations, plaintiff seeks $42,954 in costs, expenses and damages. According to plaintiff, "the majority of the damages sought by CBC pertain to

1. *See Commerce Int'l Co. v. United States,* 167 Ct.Cl. 529, 536, 338 F.2d 81, 85 (1964).

2. *See PBI Elec. Corp. v. United States,* 17 Cl.Ct. 128, 133 (1989); *Lewis–Nicholson, Inc. v. United States,* 213 Ct.Cl. 192, 204, 550 F.2d 26, 32 (1977); *Petrofsky v. United States,* 203 Ct.Cl. 347, 365, 488 F.2d 1394, 1404 (1973).

3. *See generally Womack v. United States,* 182 Ct.Cl. 399, 389 F.2d 793 (1968).

4. *See generally Adams v. United States,* 175 Ct. Cl. 288, 358 F.2d 986 (1966).

its own internal costs incurred in responding to the Government's unfounded criminal investigation and possible debarment of CBC ... Attorney's fees constitute only $12,018 of plaintiff's Count XII total damages." Brief of July 15, 1991, p. 30–31.

The Government argues that Count XII sounds in tort for malicious prosecution or abuse of process and therefore should be dismissed. In the alternative, the defendant asks the court to dismiss Count XII because it seeks damages which are not recoverable as a matter of law.

## DISCUSSION

The Tucker Act, 28 U.S.C. § 1491(a)(1), expressly excludes the tort claims from the jurisdiction of the court:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages *in cases not sounding in tort*. [Emphasis added.]

However, the Tucker Act has been interpreted to allow jurisdiction over claims which although somewhat "tortious" in nature, are essentially based upon the breach of a contractual obligation. *H.H.O., Inc. v. United States*, 7 Cl.Ct. 703, 706 (1985). In *Olin Jones Sand Co. v. United States*, 225 Ct.Cl. 741 (1980), the plaintiff sought damages for, in part, allegedly false statements made by representatives of the CO to the plaintiff's bonding company regarding the plaintiff's performance. In dealing with a motion to dismiss similar to the one in this case, the Court of Claims stated:

Where ... a claim is based on breach of contract it is properly within the jurisdiction of this court even though it also alleges that defendant engaged in tortious conduct in breaching the contract. In *Fountain v. United States*, 192 Ct.Cl. 495, 427 F.2d 759 (1970), *cert. denied*, 404 U.S. 839 [92 S.Ct. 131, 30 L.Ed.2d 73] (1971), we specifically stated that "[i]f

contractual relations exist, the fact that an alleged breach is tortious does not foreclose Tucker Act jurisdiction." *Id.* at 498, 427 F.2d at 761. [Citations omitted.] Insofar as plaintiff's references to defendant's alleged misrepresentations are merely another way of asserting that a breach of contract had occurred, the ... claim is not barred simply because it might also be stated as a tort. However, damages arising from defendant's alleged breach must still be limited to compensation for those injuries directly related to completion of the contract in question, as opposed to any remote or speculative effects the misrepresentations might have had on obtaining bonding for other contracts. The damages must be proper contract damages.

*Id.* at 745.

"In determining what constitutes a 'tortious breach,' the court must, therefore, distinguish between tort claims connected to a contract and tort claims independent of a contract." *Summit Contractors, Inc. v. United States*, 22 Cl.Ct. 54, 56 (1990) (citing *Transcountry Packing Co. v. United States*, 215 Ct.Cl. 390, 568 F.2d 1333 (1978)). Moreover, for the court to find jurisdiction under this test, "there must be a direct connection between the Government's contractual obligations and the alleged tortious conduct. It is not jurisdictionally sufficient if the alleged tortious conduct is merely 'related' in some general sense to the contractual relationship between the parties." *H.H.O.*, 7 Cl.Ct. at 706 (quoting *L'Enfant Plaza Properties, Inc. v. United States*, 227 Ct.Cl. 1, 11, 645 F.2d 886, 892 (1981)).

Although plaintiff labels the claims of Count XII in terms of a violation of the Government's contractual duties, the allegations supporting the claims, and the nature of the damages sought, reveal that Count XII in fact sounds in tort and is independent of the contract. Here, the claims arise from a criminal investigation relating to an allegedly unwarranted CID investigation and an allegedly unfair recommendation for debarment. As the defendant contends, and the court agrees,

these claims describe tort claims for malicious prosecution and abuse of process.

The contract duties which plaintiff claims were breached are not express but implicit in any contract. But such generalized obligations as, not interfering with the other party's performance, or failure to act in good faith, must have a contract performance referent to have any relevance. While obviously having more force than mere precatory language, good conduct obligations are not self enforcing. A generalized pattern of obnoxious behavior may have some bearing on whether one party's discretionary assessment of the other's performance is entitled to deference. Or a party claiming hindrance for example, might allege some result of that hindrance in contract terms, for instance, that nonperformance should be excused, or that delays resulted. But here there is simply no nexus alleged between the Government's allegedly tortious breach of these implicit conduct obligations and any express term of the contract.[5]

The court is also mindful of the effect Count XII would have on the balance of the case. Plainly, the Government has the right to initiate debarment proceedings and undertake investigations concerning possible labor law violations. A charge that the Government's conduct was grossly improper and unsupportable would insinuate the court into wholly independent administrative procedures, far beyond the contract at issue. That type of intrusion and distraction would sidetrack the contract action at bar. While that concern is less theoretical than practical, it leads to the conclusion that the focus of such an inquiry is not on the contract.

■■■■■ The non-contractual nature of the claim is further highlighted by the type of damages sought. Plaintiff seeks reimbursement of attorney's fees and internal expenses for defending itself against the criminal investigation and possible debarment. Counsel fees and other litigation expenses are not recoverable as breach of contract damages absent a specific authorization. *See, e.g., Kania v. United States,* 227 Ct.Cl. 458, 466, 650 F.2d 264, 269, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981) ("expenses in litigation, whether legal, accounting, secretarial, or other" were not recoverable); *Goolsby v. United States,* 21 Cl.Ct. 88, 90–91 (1990) (sums expended to defend a collection action, which was instituted as a result of defendant's alleged bad faith breach of a loan agreement were not recoverable); *Mazama Timber Prods., Inc. v. United States,* 6 Cl.Ct. 87, 90 (1984) (litigation funds expended by plaintiff as a result of Government's collection efforts, where those effort themselves were held to be a breach of contract, were not recoverable). The attorney's fees and internal costs sought by plaintiff in Count XII were not incurred in connection with the contract at bar. Plaintiff is therefore not entitled, as a matter of law, to recover the damages sought in Count XII.

## CONCLUSION

Defendant's motion to dismiss Count XII is granted. The motion to quash the subpoenas directed to attendance by Loschi and Conklin is also granted.

---

**5.** As defendant notes, unlike CBC's claims in Count XII, the cases cited by CBC in support of its contention that the court has jurisdiction over tortious breaches of contract, demonstrate a nexus between the alleged wrongful acts and a specific contractual duty on the part of the Government related to contractor performance. *See, e.g., Malone v. United States,* 849 F.2d 1441, 1445–46, *modified,* 857 F.2d 787 (Fed.Cir.1988) (duty to inform contractor of compliance, where breach caused interference with performance); *Womack v. United States,* 182 Ct.Cl. 399, 413 (1968) (duty to provide accurate estimates, upon which contractor's performance is based).