**JUNO ONLINE SERVICES, L.P., Plaintiff,**

v.

**JUNO LIGHTING, INC., Defendant.**

**JUNO LIGHTING, INC., Counterclaim–Plaintiff,**

v.

**JUNO ONLINE SERVICES, L.P. and D.E. Shaw & Co., L.P., Counter-claim–Defendants.**

No. 97 C 791.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 29, 1997.

Jeffrey E. Stone, Paula Jill Krasny, McDermott, Will & Emery, Chicago, IL, Raphael V. Lupo, McDermott, Will & Emery, Washington, DC, for Juno Online Services and D.E. Shaw & Co., L.P.

Samuel Fifer, Stuart Altschuler, Ronald Scott Bell, Sonnenschein, Nath & Rosenthal, Chicago, IL, Kirk R. Ruthenberg, Catherine Marie Myers, Sonnenschein, Nath & Rosenthal, Washington, DC, for Juno Lighting, Inc.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Plaintiff Juno Online Service ("June Online") sues defendant Juno Lighting, Inc. ("Juno Lighting") seeking a declaration that it has not violated federal trademark law. In addition, in Counts II–IV, plaintiff seeks declaratory, injunctive and monetary relief for trademark misuse, as well as for violations of the Lanham Act and state unfair competition law. Defendant now moves to dismiss Counts II–IV for failure to state a cause of action and to strike all claims for monetary relief.

## I. BACKGROUND

The following information is taken from plaintiff's amended complaint. Juno Online, a Delaware limited partnership with its principle place of business in New York City, is an online provider with approximately 1.5 million subscribers. Juno Lighting, a Delaware corporation with its principal place of business in Des Plaines, Illinois, is a manufacturer and retailer of recessed and track lighting. Juno Lighting has used the Juno name in its logo since 1976 and holds two federal trademarks for the name "Juno."

The current dispute revolves around the Internet and the use of the domain name "juno.com". The Internet is a network of computers that are linked together, allowing computer users to share information and data. *See generally, Intermatic Inc. v. Toeppen,* 947 F.Supp. 1227, 1230–32 (N.D.Ill. 1996). Each computer that is linked to the Internet contains a numeric address called an Internet protocol address, or IP address. The numeric IP address has four parts, each separated by a decimal point. An example of such an address would be 123.112.101.1. Am. Compl. ¶ 8. However, since it is easier to use, each computer is given an alphanumeric address, called a domain name, that corresponds to the IP address. When an Internet user types in the domain name, the user's computer reads the name as the numeric IP address and contacts the appropriate computer. An example of such a domain name is "juno.com".[1]

To send electronic mail ("e-mail"), the user addresses the message to the domain name of the recipient's e-mail provider. America Online, for instance, is an e-mail provider, whose domain name is "aol.com". Each user of the America Online service is given a user name to use with the domain name (*e.g.,* "harrysmith"). Therefore, if a person wants to contact Harry Smith, an America Online subscriber, the user would send an e-mail message to "harrysmith@aol.com". The computer would read "aol.com", translate this into the corresponding numeric IP address, and deliver the message to the America Online computer, which would then deliver the message to Harry Smith.

The domain name also functions as a "World Wide Web" address, if preceded by the letters www (*i.e.,* www.aol.com). Web sites are pages of electronic information that a company, organization, or person wants to advertise to Internet users. Entities and people such as Sports Illustrated, Duke University, the National Basketball Association, and certain individual politicians have web sites that allow Internet users to look up information.

In December of 1994, Juno Online registered the domain name "juno.com" with Network Solutions, Inc. ("NSI") and, subsequently, began providing free e-mail service to customers on April 22, 1996. Those who use Juno Online's e-mail service are given

---

1. More precisely, "juno" is the domain name, while "com" is the top level domain. However, for purposes of this motion, the court will refer to "juno.com" as the domain name. For a more detailed discussion on how the Internet works and the structure of domain names, see *Intermatic,* 947 F.Supp. at 1230–32.

their own user name to use together with Juno Online's domain name (e.g., harrysmith@juno.com). According to Juno Online, its service has been quite popular, with 250,000 new accounts having been opened in January of 1997 alone. Juno Online currently services more than one out of every twenty United States e-mail addresses. Since July 5, 1995, Juno Online has also been using the World Wide Web address "www.juno.com" and, currently, its web page is "visited" thousands of times a day. By virtue of a government contract with the National Science Foundation, NSI is the exclusive registrar of Internet domain names. Therefore, once Juno Online registered the domain name "juno.com" with NSI, no other business or person could obtain that address.

NSI's general policy is to register a specific domain name to the first person or entity to apply for registration. However, in 1995, NSI instituted a "Domain Name Dispute Policy" that allows a third party to challenge a registrant's domain name, despite the "first come, first serve" general rule. According to the policy, to challenge a domain name, the third party must notify the registrant that the use of the domain name violates the third party's intellectual property rights. The third party must also file with NSI a certified copy of a trademark registration indicating that the third party owns a trademark that is the same as the contested domain name. If the domain name registrant cannot produce a similar trademark registration, NSI's policy requires it to suspend the use of the domain name until the issue is resolved. However, if either the registrant or third party files suit against the other before the suspension takes effect, NSI allows the registrant to continue using the domain name and leaves it for the court to decide which party should be allowed to use the domain name.[2]

In July, 1995, D.E. Shaw & Co., L.P., an affiliate of Juno Online, began applying for federal service mark and trademark protection for the word "Juno", as well as for various designs, slogans, and phone numbers related to "Juno". Juno Lighting sent a letter to Juno Online in June of 1996 stating their opposition to the Juno Online trademark applications. Juno Lighting also sent a letter to NSI on August 28, 1996 requesting that NSI cancel Juno Online's domain name "juno.com".

After NSI received Juno Lighting's letter, pursuant to its dispute policy, NSI sent Juno Online a letter dated September 19, 1996, stating that, unless Juno Online transferred the domain name "juno.com" to Juno Lighting or filed a declaratory judgment action in federal court by October 26, 1996, NSI would suspend the operation of the domain name "juno.com". In response, Juno Online filed this action in the Eastern District of Virginia, naming Juno Lighting and NSI as defendants. However, after NSI agreed not to suspend the use of "juno.com" until the case has been resolved, Juno Online agreed voluntarily to dismiss NSI from the suit and the case was transferred to the Northern District of Illinois. Subsequently, Juno Lighting obtained, by registering with NSI, the domain name "juno-online.com". According to Juno Lighting, this was done in order to prevent others from obtaining the name, thus allowing Juno Lighting to transfer the domain name to Juno Online to help resolve this dispute.

In Count I of the amended complaint, plaintiff seeks a declaration that its use of the domain name "juno.com" does not infringe or dilute Juno Lighting's trademark. In Count II, labeled "trademark misuse," Juno Online seeks a declaration that defendant misused the Juno Lighting trademarks, as well as injunctive relief, monetary damages, and a cancellation of Juno Lighting's trademark registration. Count III alleges a Lanham Act violation arising from Juno Lighting's registration of the domain name "juno-online.com". Count IV speaks in state unfair competition and deceptive trade practices law. Defendant has counterclaimed for trademark infringement and dilution, unfair competition, and violations of Illinois state law. Juno Lighting now moves to dismiss

---

**2.** Some of the facts contained in the domain name policy, which are only relevant to the motion to dismiss Count II, are not contained in the complaint. As such, pursuant to FED. R. CIV. P. 12, the court treats defendant's motion to dismiss Count II as a motion for summary judgment pursuant to FED. R. CIV. P. 56.

Counts II, III, and IV of plaintiff's amended complaint and to strike all claims for monetary relief. For the following reasons, the court grants defendant's motion.

## II. STANDARD

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept "the well-pleaded allegations in the complaint as true and draw[ ] all reasonable inferences in favor of the plaintiff." *Porter v. DiBlasio,* 93 F.3d 301, 305 (7th Cir.1996) (citing *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429 (7th Cir.1996)). Dismissal is only appropriate if there is no set of facts that, if proven true, would entitle plaintiff to relief. *Id.* (citing *Travel All Over,* 73 F.3d at 1429–30). Where the court considers evidence outside the pleadings, as the court has in deciding the motion to dismiss Count II, the motion is treated as a motion for summary judgment. FED. R. CIV. P. 12(B). Summary judgment will be granted only if, viewing the facts and inferences in the light most favorable to the non-moving party, the party moving for summary judgment proves the absence of a genuine issue of material fact and establishes its right to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. TRADEMARK MISUSE

In Count II, plaintiff has asserted a claim for trademark misuse, arguing that Juno Lighting misused its trademark by attempting to put Juno Online out of business. Pl.'s Mem. in Opposition at 6–7. According to plaintiff, Juno Lighting not only tried to have NSI cancel Juno Online's domain name, but it also tried to confuse the public and "extract concessions" from plaintiff by obtaining the domain name "juno-online.com". Defendant, however, has pointed out that trademark misuse is not a recognized affirmative claim. In the past, it has been confined to being asserted as a defense to a suit for trademark infringement or as an element of a separate tort action.

In light of the novel issues presented by this claim, the court heard oral arguments from both parties on August 12, 1997. The court limited the arguments to the issue of whether this court should recognize an affirmative claim for trademark misuse. After hearing the arguments and considering the briefs and evidence filed, the court finds that, if, as plaintiff claims, in light of new technology and novel issues surrounding the Internet, an affirmative claim for trademark misuse should be recognized, this is not the proper case in which to do so.

### A. Background History of the Misuse Defense

In 1942, the Supreme Court recognized the defense of patent misuse in *Morton Salt Co. v. G.S. Suppiger Co.,* 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942). In that case, the plaintiff sued arguing that the defendant's salt depositing machine infringed the plaintiff's patent. However, the Court found that the plaintiff was leasing its own salt depositing machines to canners on the condition that the licensees use a certain unpatented salt tablet produced by the plaintiff's subsidiary, *id.* at 491, 62 S.Ct. at 404, and that this tying arrangement was an attempt on the plaintiff's part to use the government granted monopoly to acquire another monopoly in an unpatented product. *Id.* The Court decided that, if it allowed the plaintiff to invoke successfully its patent in the infringement suit, it would be assisting the plaintiff in acquiring a second monopoly and, thus, hurting competition and the public. *Id.* at 493, 62 S.Ct. at 405. Therefore, invoking the "clean hands" doctrine, the Court held that the patentee was not allowed to invoke the protection of the law through an infringement suit, at least until it stopped the offending practice. *Id.* Although courts have continued to apply the patent misuse defense, *see, e.g., Senza–Gel Corp. v. Seiffhart,* 803 F.2d 661 (Fed.Cir. 1986); *Transitron Elec. Corp. v. Hughes Aircraft Co.,* 487 F.Supp. 885, 892–93, 904–05 (D.Mass.1980), *aff'd* 649 F.2d 871 (1st Cir. 1981), in 1988, Congress limited the reach of this defense. *See* The Patent Misuse Reform Act of 1988, Pub.L. No. 100–703, 102 (conditioning, in part, the misuse defense on a showing of market power in the relevant market).

The misuse defense has also been extended to other forms of intellectual property. For instance, while courts are split on whether a copyright misuse defense exists, in 1990, the Fourth Circuit recognized the defense in *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970 (4th Cir.1990). The court reasoned that, since patent and copyright have similar origins and purposes, and since the Supreme Court had recognized a patent misuse defense in *Morton Salt*, a misuse defense should also be recognized in copyright law. *Id.* at 976. Summing up the defense, the court stated that "[t]he question is not whether the copyright is being used in a manner violative of antitrust law ... but whether the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright." *Id.* at 978.

The misuse defense has also enjoyed a substantial history in the field of trademarks. However, courts have taken different approaches in applying the defense in this field. *See generally* Stephen J. Davidson and Nicole A. Engisch, *Trademark Misuse in Domain Name Disputes*, THE COMPUTER LAWYER, Aug. 1996, at 13. Some courts have applied trademark misuse in situations where the mark is being used to violate the antitrust laws. *See, e.g., Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 298 F.Supp. 1309, 1315 (S.D.N.Y.1969) ("An essential element of the antitrust misuse defense in a trademark case is proof that the mark itself has been the basic and fundamental vehicle required and used to accomplish the violation."). For example, in *Phi Delta Theta Fraternity v. J.A. Buchroeder & Co.*, 251 F.Supp. 968, 975–80 (W.D.Mo.1966), the court held that, if the defendant could prove that a group of fraternities had conspired with certain companies to restrain trade by (1) scheming to obtain trademarks that allowed the fraternal organizations to control the sale of insignia goods, and (2) granting only a few companies licenses to sell insignia goods, defendant would have shown a valid misuse defense to infringement. In ruling, the court relied significantly on 15 U.S.C. § 1115(b)(7), which explicitly states that a defense to the presumption granted to incontestable marks is "[t]hat the mark has been or is being used to violate the antitrust laws of the United States." *Phi Delta Theta*, 251 F.Supp. at 978–80.

Other courts have relied on the "clean hands" doctrine and found misuse even where there was no antitrust violation. Plaintiff, for instance, points to *Clinton E. Worden & Co. v. California Fig Syrup Co.*, 187 U.S. 516, 539–40, 23 S.Ct. 161, 168, 47 L.Ed. 282 (1903), in which the Supreme Court held that the maker of a certain laxative could not enforce its trademark in "Syrup of Figs", since the laxative did not actually contain fig juice. According to the Court, such deception deprived the trademark holder of the right to enforce the trademark in a court of equity.

Over the years, in applying the copyright misuse defense, courts have also differed on whether the defendant must show a relationship or nexus between the alleged misuse and the acquisition or use of the trademark. *See generally* Stephen J. Davidson and Nicole A. Engisch, *Trademark Misuse in Domain Name Disputes*, THE COMPUTER LAWYER, Aug. 1996, at 13 (discussing relevant cases). Some courts have required such a nexus, *see, e.g., Tveter v. AB Turn–O–Matic*, 633 F.2d 831, 839 (9th Cir.1980), cert. denied, 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed.2d 300 (1981) ("What is material is not that plaintiff's hands are dirty, but that he dirtied them in acquiring the rights he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant.") (quoting *Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir.1963)), while others have found misuse despite the fact that the misconduct is unrelated to the mark. *See, e.g., United States Jaycees v. Cedar Rapids Jaycees*, 794 F.2d 379 (8th Cir.1986) (refusing to enjoin local Jaycees affiliate from using the trademark "Jaycees" since the national organization was seeking the injunction for an improper reason, even though the improper reason, that the local chapter admitted woman, had nothing to do with the acquisition or use of the trademark).

### B. Misuse As An Affirmative Claim

The history of misuse as an affirmative claim has been scarce at best. At oral ar-

gument, plaintiff cited two cases for the proposition that patent misuse has been used affirmatively. First, plaintiff points to *International Indus. and Devs., Inc. v. Farbach Chem. Co., Inc.*, 145 F.Supp. 34, 35 (S.D.Ohio 1956), *aff'd*, 241 F.2d 246 (6th Cir. 1957), in which the patent holder sent 8,000 letters to members of its trade stating that any persons who used any dip-type silver cleaner, other than five specific brands licensed by the plaintiff, would be subject to prosecution, when in fact, the defendant's unlicensed dip-type liquid silver cleaner did not infringe on the plaintiff's patent. After the plaintiff filed suit for infringement, the defendant counterclaimed, asserting some type of unfair competition claim, and was awarded $100,000 in damages and $15,000 in attorney's fees. *Id.* at 37. Second, plaintiff points to *Medtronic Inc. v. Eli Lilly & Co.*, 15 U.S.P.Q.2d 1465, 1990 WL 61161 (D.Minn.1990), in which the plaintiff argued that Eli Lilly had misused its patents on a defibrillator by tying the licensing of the machine to sales of an unpatented product. The misuse claim was based on state law and the court found that, since federal patent law did not provide for injunctive or monetary relief for misuse, the claims were not preempted. *Id.* at 1468. Furthermore, the court found that patent misuse may be used to prove the element of improper means in a claim for intentional interference with contract. *Id.*

Both of the above cases are grounded specifically in patent law and rely heavily on concepts of unfair competition rather than exclusively on the concept of misuse. In fact, in *Medtronic*, the court relied exclusively on state interference with contract law, stating that federal law does not allow recovery of compensatory damages for patent misuse. *Medtronic*, 15 U.S.P.Q.2d at 1468. Therefore, *Medtronic* appears to stand for the proposition that an affirmative claim of patent misuse does not exist. Similarly, the *International Industries* court based its grant of damages on a finding of "wanton and premeditated acts of unfair trade practice and unfair competition," *International Indus.*, 145 F.Supp. at 37, a finding most likely based on state law. Since the two cases cited·by plaintiff appear to have relied on state unfair competition law rather than exclusively on claims of misuse, the cases are inapposite.

Furthermore, although both parties agreed at oral argument that patent misuse has been used in the past as an affirmative claim, it is not clear to the court that it is proper to allow patent misuse to be used affirmatively. Looking to cases such as *Morton Salt*, at least one court has held that, since the misuse defense is temporary in that it merely suspends the right of a patent holder to receive compensation for infringement until the offending conduct "has been abandoned," *Transitron*, 487 F.Supp. at 893 (citing DONALD S. CHISUM, PATENTS 19–91 (1978)), awarding damages pursuant to an affirmative claim of misuse would be improper. *Id.*; *see also CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1090 (W.D.Ky.1995) (following the holding of *Transitron* ) Instead, the court found that patent misuse was purely a defense "developed as an equitable doctrine … analogous to the clean hands defense." *Id.* (citing CHISUM, PATENTS 19–91 (1978)).

Plaintiff has also submitted, after oral argument, an additional case from an English court. The case, *Prince PLC v. Prince Sports Group, Inc.*, Ch.1997–P–No. 2355 (High Ct. of Justice July 30, 1997), involved almost the exact scenario as the present case. The plaintiff in that case sued the defendant for allegedly threatening infringement proceedings as a result of plaintiff obtaining the domain name "prince.com". Besides threatening litigation, the defendant had also contacted NSI, resulting in NSI sending the plaintiff a letter indicating that the domain name would be suspended unless it transferred the domain name to the defendant or filed suit. The Court concluded that a threatening letter that defendant sent to plaintiff did constitute trademark misuse and agreed to issue declaratory and injunctive relief. However, the Court found that the plaintiff had not proven that it was damaged and declined to order an inquiry into damages. Importantly, the decision was based on a specific statute passed by Parliament, Section 21 of the Trade Marks Act 1994, which states that any aggrieved person may bring an action for declaratory, injunctive,

and/or monetary relief "[w]here a person threatens another with proceedings for infringement of a registered trademark." There is, however, no comparable statute in United States law and no comparable common law right. Therefore, the case is inapposite.

Since the affirmative claim for patent misuse has a suspect history to begin with, and since plaintiff has failed to point the court to a single case in which an American court has used trademark misuse affirmatively, the court is quite skeptical to allow an affirmative claim for trademark misuse. The fear expressed in cases such as *Morton Salt* is that the holder of a government monopoly will use the monopoly to the detriment of the public by destroying competition. By contrast, in trademark law, the mark holder usually does not have the ability to destroy competition. The holder can only keep competitors from using the mark and, in most circumstances, cannot keep them from selling a directly competing product. Therefore, there appears to be less of a justification for extending the trademark misuse doctrine than there is in the patent arena.

Perhaps a court may choose to recognize a new cause of action in a situation in which the mark holder does attempt to destroy its competitors through the use of its mark. However, this is not such a case. While, Juno Online does claim that Juno Lighting tried to use its government granted marks to put Juno Online out of business, there is no factual allegation backing up this conclusory statement. Plaintiff does not allege that defendant's purpose in asserting its rights under the NSI policy was to derive a competitive advantage over Juno Online, which, on its face, would be an absurd allegation considering that the two entities are involved in completely different businesses. Furthermore, while defendant did obtain the domain name "juno-online.com", there is no evidence that would lead a reasonable trier of fact to conclude that Juno Lighting attempted to confuse Internet users by using the domain name "juno-online.com".

Finally, at oral argument, plaintiff stated that, under Count II, it is requesting four types of relief: declaratory relief, injunctive relief, cancellation of Juno Lighting's registration, and monetary damages. As to declaratory and injunctive relief, the court finds that, if plaintiff did not infringe or dilute defendant's trademarks, plaintiff will be able to obtain declaratory and injunctive relief through Count I of its complaint, which speaks in declaratory judgment. Additionally, defendant has counterclaimed for trademark infringement and dilution to which plaintiff has asserted the defense of trademark misuse. If, as plaintiff claims, cancellation of defendant's trademark is a valid remedy for trademark misuse, *see, e.g., Phi Delta Theta,* 251 F.Supp. at 974, such a remedy will be available through its defense to the counterclaim.[3]

Therefore, the only remedy sought via plaintiff's affirmative claim for trademark misuse that it could not receive otherwise is compensatory damages. However, even if there was such a cause of action, plaintiff has not sufficiently alleged damages in its amended complaint. In its amended complaint, plaintiff does claim that Juno Lighting's actions has injured plaintiff, however, it does not state what those injuries are. While plaintiff surely would be damaged if its domain name "juno.com" is suspended, as of today, the domain name has not been suspended. Thus, plaintiff has not lost business and its reputation has not suffered. Conclusory allegations of damage are not enough to support a damage claim and certainly not enough to persuade this court to grant a new cause of action.

The court does note that plaintiff may claim that it has incurred damage by having to spend money to bring this lawsuit. However, the general rule in American law is that, unless otherwise indicated by statute, each party bears its own costs of litigation. Therefore, the court finds that such harm is not enough to persuade the court to create a new cause of action.

**3.** The court reserves final judgment on whether cancellation of a trademark is a valid remedy for trademark misuse for a later date.

In conclusion, given the circumstances of this case, the creation of an affirmative cause of action for trademark misuse is unnecessary. If plaintiff's claim is meritorious, it has adequate remedies at its disposal. As such, defendant's motion to dismiss Count II of plaintiff's complaint is granted.

## IV. SECTION 43(a) OF THE LANHAM ACT

In Count III of its amended complaint, plaintiff claims that, through defendant's "use or 'warehousing' of the 'juno-online' domain name," Am. Compl. ¶ 81, defendant has violated Section 43(a) of the Lanham Act, which states that "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device" that "is likely to cause confusion . . . or to deceive as to affiliation, connection, or association . . . shall be liable in a civil action." 15 U.S.C. § 1125(a) (1994). Defendant claims, however, that, because it has merely acquired the domain name and has not used it, plaintiff has failed to allege two essential requirements of a Section 43(a) claim: (1) that defendant caused goods and services to enter into commerce; and (2) that defendant used the domain name in commerce.

■ The court finds defendant's first argument to be frivolous. Defendant has cited the case of *Monoflo Int'l, Inc. v. Sahm*, 726 F.Supp. 121, 125 (E.D.Va.1989) for the proposition that Section 43(a) requires that defendant "cause . . . goods or services to enter into commerce." While this statement was true in 1989 when the *Monoflo* decision was handed down, the statute has subsequently been amended. Today, the trademark violation need only be "in connection with any goods or services." 15 U.S.C. § 1125(a). Defendant is no longer required actually to cause goods or services to be placed into the stream of commerce. As such, defendant's argument is wholly without merit.

The court, however, finds defendant's second argument to be persuasive. To claim successfully a violation of Section 43(a), plaintiff must allege that defendant used the trademark in commerce. *Id.* "Use in commerce" is defined as "the bona fide use of a mark in the ordinary course of trade, *and not made merely to reserve a right in a mark.*" *Id.* § 1127 (emphasis added). Defendant argues that the mere reservation of a right in the domain name "juno-online.com" is not enough to constitute "use" as defendant has merely reserved the right to use the mark.

■ In its complaint, plaintiff does state that Juno Lighting's "use or 'warehousing' " of the domain name is false and misleading. Am. Compl. ¶ 81. However, the conclusory statement that defendant "used" the domain name is insufficient. "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6) ." *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir.1995) (citations omitted). Instead, plaintiff must offer some factual support in the complaint for a finding of "use."

However, in the amended complaint, plaintiff does not allege that defendant ever created a web page for the domain name "juno-online.com". In fact, in the amended complaint, plaintiff states that Juno Lighting "does not presently intend to become a provider of . . . interactive advertising services." Am. Compl. ¶ 74. Furthermore, in plaintiff's brief, plaintiff states that Juno Lighting's web page is "non-existent," Pl.'s Mem. in Opposition at 11, and admits that Juno Lighting did not use the domain name "juno-online.com" "in connection with its own business." *Id.* at 14. The only factual allegation in the complaint relating to "use" is that defendant might be "warehousing" the domain name in hopes of reselling it or trading it to Juno Online.

Plaintiff does argue that the "warehousing" of the name would be enough under Section 43(a). However, the "use in commerce" requirement would only be fulfilled if defendant were to use the Internet. *See Intermatic*, 947 F.Supp. at 1239–40. The mere "warehousing" of the domain name is not enough to find that defendant placed the mark on goods or "used or displayed [the mark] in the sale or advertising of services" as required. 15 U.S.C. § 1127. Since the complaint contains no factual allegation sup-

porting an inference that defendant "used" the Internet, the court must dismiss Count III.

## V. STATE LAW CLAIMS

In Count IV of the amended complaint, plaintiff alleges that defendant's "bad faith acts ... constitute unfair competition and deceptive trade practices under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2." Am. Compl. ¶ 86. While plaintiff does not list the "acts" to which it is referring, based on the amended complaint, the court can only conceive of two "acts" that could possibly support plaintiff's claim: (1) defendant having obtained the domain name "juno-online.com"; and (2) defendant having sent NSI a letter requesting that it cancel Juno Online's domain name "juno.com". Defendant argues that neither of these acts would support plaintiff's claims.

■ Under the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA"), 815 ILCS 505/2 (West 1993), a person or corporation can be held liable for "unfair or deceptive acts or practices" used "in the conduct of any trade or commerce." According to the statute, "[t]he terms 'trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any services and any property ... and any other article, commodity, or thing of value." 815 ILCS 505/1(f). While the Internet can be used for advertising and offering products or services for sale, plaintiff's amended complaint does not allege that defendant used the domain name to set up a web site that would have deceived consumers. In fact, plaintiff seems to have admitted otherwise in its brief. Merely obtaining a domain name, without setting up a web site or e-mail service, is not enough to constitute "trade or commerce." Furthermore, sending a letter to NSI asserting rights to the trademark "juno" is also not the type of activity that comes under the definition of "trade or commerce."

As for its claim under the Illinois Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/2 (West 1993), plaintiff relies in its brief on two subsections of the Act, subsections two and five. In relevant part, the Act states that:

> A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he ... (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services ... (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have.

815 ILCS 510/2 (2), (5).

The Act also contains a catch-all provision making it illegal to "engage[ ] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." 815 ILCS 510/2(12). It is clear from the language of the statute and the accompanying comments written by The National Conference of Commissioners on Uniform State Laws that the aim of this law is to prevent misrepresentation via trademark or advertising. "Implicit (if not explicit) within the twelve enumerated subsections of § 2 of the UDTPA is that for a violation to occur, the defendant must make some form of a representation (or do something) to the public (or a potential buyer) regarding a good or service." *Lynch Ford, Inc. v. Ford Motor Co., Inc.*, 957 F.Supp. 142, 147 (N.D.Ill.1997). The focus of this Act is on deception, see *Balsamo/Olson Group, Inc. v. Bradley Place Ltd. Partnership*, 950 F.Supp. 896, 898 (C.D.Ill.1997), and "the existence of a likelihood of confusion." *S Industries, Inc. v. GMI Holdings, Inc.*, No. 96 C 2232, 1996 WL 526792, at *3 (N.D.Ill. Sept.12, 1996). However, as already discussed, plaintiff does not allege that defendant actually created a web page under the domain name "juno-online.com". Merely registering the domain name "juno-online.com" does not create a likelihood of confusion and certainly does not amount to deception. While the court is mindful of the fact that "a plaintiff need not prove ... *actual* confusion or misunderstanding," 815 ILCS 510/2 (emphasis added)

plaintiff still must show a *likelihood* of confusion or misunderstanding. Since defendant has not been accused of representing something to potential buyers or to the public, *see, Lynch,* 957 F.Supp. at 147, the court cannot infer such a likelihood. Furthermore, the letter to NSI certainly does not create such a likelihood. Plaintiff has failed to state a claim under the UDTPA.

The court notes that plaintiff has argued that defendant obtained the domain name "juno-online.com" in order to "extort concessions from Juno" during settlement. Pl.'s Mem. in Opposition at 12. The court is mindful of the fact that this is a possible and reasonable inference from the pleadings. However, it does not alter the fact that plaintiff has failed to state a claim in Counts III and IV. While plaintiff may or may not be able to state a claim under a different theory of unfair competition, "[i]t is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Sanchez v. Miller,* 792 F.2d 694, 703 (7th Cir.1986), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987). As such, the court must dismiss Counts III and IV of the complaint.

## VI. MONETARY DAMAGES

Defendant requests that this court strike all claims of monetary relief, including punitive damages, asserted by plaintiff. After dismissing Counts II, III, and IV, the only remaining claim, Count I, speaks in declaratory judgment. "It is well-settled that the district court may grant monetary relief in declaratory judgment proceedings, even without a specific request." *Illinois Physicians Union v. Miller,* 675 F.2d 151, 158 (7th Cir.1982) (citing *Freed v. Travelers,* 300 F.2d 395 (7th Cir.1962)). However, as discussed in Section III.B, plaintiff has not sufficiently alleged monetary damages. Therefore, the court grants plaintiff's motion to strike all claims of monetary damages.

The court also grants defendant's motion to strike plaintiff's claim for punitive damages. Plaintiff has pointed to no statutory or common law authority that would permit a grant of punitive damages pursuant to Count I and the court has been unable to

find such a grant of authority in its own search. As such, the claim must be stricken. Of course, this ruling does not affect plaintiff's ability to ask for sanctions pursuant to Rule 11 should it become apparent that defendant's claim of infringement and dilution is frivolous.

## VII. CONCLUSION

Defendant's motion to dismiss Counts II, III, and IV of plaintiff's amended complaint is granted. Judgment is entered in favor of defendant on Count II and the Court dismisses Counts III and IV. Defendant's motion to strike plaintiff's prayer for monetary relief is also granted. The court strikes all claims for monetary relief, including punitive damages, in plaintiff's amended complaint.

**IT IS SO ORDERED.**