**FORD MOTOR COMPANY, Plaintiff,**

v.

**OBSOLETE FORD PARTS,
INC., Defendant.**

No. 03–CV–74536–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 13, 2004.

Gregory D. Phillips, Scott R. Ryther, Howard, Phillips, Salt Lake City, UT, Kathleen A. Lang, Dickinson Wright, Detroit, MI, for Plaintiff.

Andrew M. Grove, Reising, Ethington, Troy, MI, James F. Harvey, III, Harvey & Associates, James T. Robinson, Exclusivity–Law, Inc., Norman, OK, for Counter Claimant.

## ORDER GRANTING PLAINTIFF'S "MOTION TO DISMISS COUNTERCLAIMS"

CLELAND, District Judge.

Pending before the court is Plaintiff Ford Motor Company's ("Ford's") "Motion to Dismiss Counterclaims," filed on March 30, 2004. The matter has been fully briefed, and the court finds that the May 19, 2004 hearing on this matter is unnecessary. *See* E.D. Mich. LR 7.1(e). For the reasons set forth below, Plaintiff's motion will be granted.

## I. BACKGROUND

According Defendant's response, Defendant Obsolete Ford Parts ("OFP") has been a reseller of Ford reproduction parts for nearly 30 years. On September 8, 2003, Plaintiff wrote a letter to Defendant demanding it cease using Ford's trademark (Ford ®) in the name of its business and internet domain name and transfer the domain name to Ford. (Answer, Ex. H.) The letter stated that in the event Defendant did not transfer the domain name by September 22, 2003, Ford would file suit seeking statutory damages and declaratory relief.

Defendant alleges that, in 1994, Ford authorized it to use the Ford trademarked name and symbols in OFP's corporate name and internet domain name, so long as the names were accompanied by the word "obsolete." (Amend. Compl., Ex. A,

01/10/94 letter outlining Ford's guidelines for use of its trademarks for restoration part retailers.) Accordingly, the parties agree that Defendant operated under a license with Ford for a number of years. Defendant alleges that it operated under Ford's guidelines without objection for over nine years, until it unexpectedly received the above-referenced letter in September 2003.

Conversely, Ford alleges that it terminated Defendant's license "due to Defendant's fraudulently maintaining of two sets of books in order to deprive Ford of licensing royalties." (Pl.'s Mot. Br. at 1.) Ford claims that Defendant no longer has authority to use Ford's trademarked name and symbols. Consequently, Ford filed a trademark infringement suit against Defendant on November 10, 2003.[1] On March 11, 2004, Defendant filed its answer with affirmative defenses and also filed nine counterclaims. In the instant motion, Ford seeks dismissal of Defendant's counterclaims two through nine.[2]

## II. DISCUSSION

Ford argues that Defendant's final eight counterclaims should be dismissed because: "(1) they are thinly veiled claims for malicious prosecution, and at least two essential elements of that tort cannot be satisfied; (2) Ford's prosecution of its trademark claim is immune under the *Noerr–Pennington* doctrine; and (3) counts four through nine are mere affirmative defenses that are not cognizable as independent claims for relief." (Pl.'s Mot. Br. at 3.) Defendant contests Ford's first two arguments, but concedes that counterclaims four through seven should be treat-ed as affirmative defenses and thus dismissed as counterclaims. (Def.'s Resp. Br. at 3.) Thus, the court need only analyze counterclaims two, three, eight, and nine below.

### A. Malicious Prosecution

Plaintiff Ford argues that Defendant's counterclaims amount to nothing more than thinly-veiled allegations of malicious prosecution, and because two elements of that tort cannot be established by Defendant, the counterclaims should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Defendant agrees that, in the event it was actually asserting a claim for malicious prosecution, it could not satisfy an essential element of the tort—the element that the prior proceedings be terminated in favor of the claimant—and dismissal would be appropriate. *See Young v. Motor City Apartments*, 133 Mich.App. 671, 350 N.W.2d 790 (1984). Defendant argues that its counterclaims assert legitimate tort claims, independent of a malicious prosecution claims, and should not be treated as disguised claims for malicious prosecution.

Defendant's second counterclaim, tortious breach of contract, alleges that Plaintiff had a duty of fair dealing and a duty to act in good faith with respect to the licensing relationship between the parties. Defendant claims that these duties were breached when Plaintiff "negligently failed to investigate OFP's right to use the word 'Ford' in OFP's corporate name and in OFP's Domain Name" and demanded that Defendant transfer the name to Ford. Defendant seeks damages for the attorney fees and costs associated with responding

---

1. Defendant actually brought an action seeking declaratory judgment of non-infringement and claims of unfair competition and prima facie tort in the Western District of Oklahoma on October 31, 2003. The Oklahoma court, however, dismissed the case so that the par-ties could proceed before this court. (*See* 02/24/04 Notice, Ex. A.)

2. The first counterclaim, requesting declaratory judgment of non-infringement, is not challenged by Ford's motion.

to Ford's demand letters and the subsequent lawsuit.

■ Upon close examination of the counterclaims, the court agrees with Plaintiff that the allegations associated with this claim fit more appropriately into the rubric of malicious prosecution, and thus, regardless of the designation assigned to the claim by Defendant, the court will dismiss the counterclaim because Defendant is unable to satisfy an essential element of the tort (i.e., a prior favorable ruling). Defendant alleges that Ford simply rushed to judgment and demanded that Defendant cease using the Ford name in conjunction with its business operations and website, ultimately filing suit to obtain such a result.

Defendant claims that Ford should have known that Defendant had authorization to use the Ford trademarks, and still "egregious[ly]" pursued litigation. (Def.'s Resp. Br. at 4.) In other words, Defendant argues that there is no probable cause for an infringement action, an element of a malicious prosecution claim. In its response, Defendant argues that Plaintiff could have taken numerous measures, short of litigation, to terminate the implied license agreement that Defendant claims existed. This suggests that Ford chose litigation maliciously or for impermissible reasons, another element of a malicious prosecution claim. Finally, Defendant only specifies damages resulting from attorney fees and costs arising from this litigation.

In similar cases, courts have consistently held that a claim that, at its core, alleges malicious prosecution, but is not labeled as such, should be dismissed from a lawsuit when an essential element cannot be established. In *Baker Driveaway Co., Inc. v. Bankhead Enter., Inc.*, 478 F.Supp. 857 (E.D.Mich.1979), the defendants argued that the plaintiff's tortious interference claim was really a thinly-veiled claim of malicious prosecution and should be dis-

missed for failing to state a claim. The court examined the substance of the complaint, concluding that "a reasonable reading of [the tortious interference count] shows that the plaintiffs are challenging the defendants' substantive motives in [pursuing litigation]." *Id.* at 860. The court stated: "It is the belief of this court that a careful reading of [the tortious interference count] indicates that it most resembles an action for malicious prosecution." *Id.* As the court does in this case, Judge Joiner looked past the label assigned to the claim by the plaintiffs and considered the substance of the allegations. *See also Tacon Mechanical Contractors, Inc. v. Aetna Cas. and Sur. Co.*, 65 F.3d 486, 488 (5th Cir.1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (courts are required to "pierce through the pleadings and their adroit craftsmanship to reach the substance of the claim").

Further, in *C.B.C. Enter., Inc. v. United States*, 24 Cl.Ct. 1 (Cl.Ct.1991), a case analogous to the one presently before the court, the United States Claims Court dismissed the plaintiffs' breach of contract allegations (based on implied contractual duties of good faith), finding that the breach of contract allegations, in substance, described tort claims for malicious prosecution and abuse of process. *See id.* at 4–5 ("Although plaintiff labels the claims of Count XII in terms of a violation of the Government's contractual duties, the allegations supporting the claims, and the nature of the damages sought, reveal that Count XII in fact sounds in tort and is independent of the contract.... [T]hese claims describe tort claims for malicious prosecution and abuse of process."). The court especially focused on the damages sought by the plaintiff, stating,

> The non-contractual nature of the claim is further highlighted by the type of

damages sought. Plaintiff seeks reimbursement of attorney's fees and internal expenses for defending itself against the criminal investigation and possible debarment. Counsel fees and other litigation expenses are not recoverable as breach of contract damages absent a specific authorization.... The attorney's fees and internal costs sought by plaintiff in Count XII were not incurred in connection with the contract at bar. Plaintiff is therefore not entitled, as a matter of law, to recover the damages sought in Count XII.

*Id.* at 5 (citations omitted). The instant case is similar, in that Defendant alleges that its damages are attorney fees and costs associated with defending Ford's claim.

The court finds persuasive the approach adopted by the courts discussed above and this case is sufficiently analogous to warrant the same result. Defendant's tortious breach of contract claim (Count II) substantively amounts to a claim for malicious prosecution. As such, it must be dismissed for failure to state a claim.

■ Similarly, Defendant's prima facie tort claim (Count III) is a thinly-veiled attempt to allege malicious prosecution. The counterclaim alleges that Plaintiff's conduct is "generally culpable and not justified" because this "action ... should never have been brought." (Answer at ¶¶ 54, 55.) As a result of Plaintiff's "malicious and oppressive" acts, "OFP has been required to defend" this meritless action, and thus seeks its attorney fees, costs, and punitive damages. (*Id.* at ¶¶ 55, 56.) These allegations clearly take issue with Plaintiff's decision to prosecute this case.

Numerous courts that have carefully analyzed similar complaints have dismissed the claim, recognizing that the claim was really one for malicious prosecution disguised as a prima facie tort claim. *See Eavzan v. Polo Ralph Lauren Corp.*, 40

F.Supp.2d 147, 152 (S.D.N.Y.1998) (dismissing prima facie tort claim that attempted to "circumvent the obstacles to [a] malicious prosecution claim"); *Mitchell v. State Farm Mut. Auto. Ins. Co.*, No.97–0746, 1997 WL 810034, *4–5 (N.D.Tx. Dec. 22, 1997) (stating that courts do not approve of attempts to "fracture one cause of action [ (malicious prosecution in this case) ] into three or four by massaging the labels and language") (citations omitted); *see also Church of Scientology v. Siegelman*, 94 F.R.D. 735, 738 (S.D.N.Y.1982) (finding that it would make little sense to allow a party to simply rename its cause of action to avoid a defective malicious prosecution claim) ("A party will not be allowed to take a defective claim for malicious prosecution, abuse of process, or any other traditional tort and simply recast it as one for prima facie tort.").

Allowing Defendant to recast its allegations of malicious prosecution into the amorphous rubric of prima facie tort would permit Defendant to avoid the elements of malicious prosecution by simply attaching a different label to the tort. The clear import of Defendant's allegations is that Plaintiff maliciously instituted this action rather than taking other measures. Thus, it will be treated as a claim for malicious prosecution, and as such, will be dismissed under Federal Rule of Civil Procedure 12(b)(6). *See Horwitz v. Sprague*, 440 F.Supp. 1346, 1352–53 (S.D.N.Y.1977) ("Despite [the prima facie tort] nomenclature, it is apparent that defendants are asserting a claim for malicious prosecution, for the substance of their charge is that the claim against defendants was known to be false and done with malice 'and with the intent to compel the defendants ... to pay monies when there was no basis in law or in fact for a claim against them....' The law is clear that the prima facie tort doctrine applies only where the injury does not fall into a traditional tort category....

The tort simply will not lie for the interference with defendants represented by the time and expense of defending this lawsuit.") (citations omitted).

## B. Affirmative Defenses

■ Finally, the two remaining theories that Defendant wishes to pursue as counterclaims do not form a basis for an affirmative claim for damages, but are more appropriately considered affirmative defenses.

First, the court has been unable to locate a case in this circuit that recognizes trademark misuse (Count VIII) as in independent cause of action. In fact, in *Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F.Supp.2d 800, 810 (E.D.Mich.2000), the court explained that there was no published case law in the Sixth Circuit discussing the viability of such a theory as a *defense* to trademark infringement, let alone its viability as an independent cause of action. The court noted that other courts had questioned the existence of the defense of trademark misuse. *Id.* (citing *Northwestern Corp. v. Gabriel Mfg. Co. Inc.*, 2004 1998 WL 525431, *8 (N.D.Ill. Aug. 19, 1998) ("if the defense of 'trademark misuse' even exists, it is probably limited to misrepresentations . . .")); *see also Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F.Supp.2d 823, 831 n. 23 (E.D.Va.2001) ("authority is uniform in allowing trademark misuse only as an affirmative defense to a trademark infringement action"). Plaintiff cites no case law to the support its theory that trademark misuse can be an independent basis for relief. The court declines to announce or create an independent cause of action for trademark misuse and finds that Defendant's claim is more appropriately cast as a potential affirmative defense. *See Juno Online Serv. v. Juno Lighting, Inc.*, 979 F.Supp. 684, 687–691 (N.D.Ill.1997) (setting forth a detailed history of the trademark misuse defense and declining to allow the defense to be brought as an affirmative claim) ("Since the affirmative claim for *patent* misuse has a suspect history to begin with, and since plaintiff has failed to point the court to a single case in which an American court has used *trademark* misuse affirmatively, the court is quite skeptical to allow an affirmative claim for trademark misuse.") (emphasis added).

Defendant also does not offer any authority to support its argument that its final counterclaim, waiver and abandonment, can form the basis of an affirmative claim for relief. The gist of this claim is that, due to Plaintiff's inaction in protecting its trademarks, the mark has become generic. This is cast as a defense or as additional support for Defendant's declaratory judgment counterclaim, and Plaintiff has presented no case law in response to Plaintiff's motion demonstrating that this claim can be plead as an independent cause of action. The court finds that it cannot be a basis upon which Defendants may be granted affirmative relief. *See* Fed.R.Civ.P. 8(c) (listing waiver as an affirmative defense).[3]

## III. CONCLUSION

IT IS ORDERED that Plaintiff's "Motion to Dismiss Counterclaims" [Dkt. # 9] is GRANTED. Defendant's first counterclaim is the only remaining counterclaim, counterclaims two and three are dismissed, and counterclaims four through nine shall be treated as affirmative defenses.

---

**3.** Having concluded that the disputed counterclaims should be dismissed as malicious prosecution claims or as affirmative defenses, the court need not reach Plaintiff's argument based on the *Noerr–Pennington* doctrine.